## FRICK ET AL. *v.* PENNSYLVANIA.

### ERROR TO THE SUPREME COURT OF PENNSYLVANIA.

Nos. 122, 123, 124, 125. Argued December 7, 1923.—Decided June 1, 1925.

1. A state statute attempting to tax the transfer of tangible personal property having an actual situs in other States transcends the power of the State so attempting and contravenes the due process clause of the Fourteenth Amendment. P. 488.

2. The power to regulate the transmission, administration and distribution of tangible personal property on the death of the owner rests with the State of its situs, the laws of other States having no bearing save as that State expressly or tacitly adopts them; and then their bearing is attributable to such adoption and not to any force of their own. P. 491.

3. A law of Pennsylvania (Act No. 258, Ls. of 1919, 521) provides that where a person domiciled in the State dies seized and possessed of real or personal property, its transfer by will or intestate laws, whether the property be in that State or elsewhere, shall be taxed at specified percentages of the clear value of the property transferred, such value to be ascertained by deducting debts and expenses of administration from the gross value of the estate, but without making any deduction for taxes paid to the United States or any other State. *Held:* (1) That the law is not an escheat, but a tax, law. P. 492. (2) That a tax so levied was void in so far as based on transfer of decedent's tangible personal property in New York and Massachusetts, where

ancillary letters were granted, the property administered and transfer taxes imposed and collected. P. 496.

4. A State, being without power to tax directly the transfer of tangible personal property in another State, can not accomplish the same thing indirectly by taking the whole of the decedent's estate, including that foreign property, as the basis for measuring the tax on the transfer of that part of the estate which lies within its jurisdiction. *Maxwell* v. *Bugbee,* 250 U. S. 525, and *Plummer* v. *Coler,* 178 U. S. 115, distinguished. P. 494.

5. The State which created a corporation has power to tax the transfer of its stock on death of a stockholder, and to enforce the tax by means practically making the State a lienor in possession, irrespective of the decedent's domicil and the actual situs of the stock certificates. P. 497.

6. This power being superior to the jurisdiction over the stock of another State in which the decedent stockholder resided, the tax imposed by the State of the corporation must be paid before the stock can be brought into administration in the State of his domicil; and a statute of the domiciliary State (Penna. Ls. 1919, 521, *supra,*) which does not allow the value paid out of his estate for this purpose to be deducted in computing the domiciliary transfer tax, in effect taxes what is not within the State's jurisdiction and violates the due process clause of the Fourteenth Amendment. *Id.*

7. The federal "estate" tax and the Pennsylvania "transfer" tax both are imposed as excises on the transfer of property from a decedent, and both take effect at the instant of transfer, so that neither has priority in time over the other. P. 498.

8. The taxing power of federal and state governments is generally so far concurrent as to render it admissible for both to tax the same subject at the same time. P. 499.

9. Neither the United States nor the State in determining the amounts of its transfer tax is under any constitutional obligation to make any deduction on account of the tax of the other. Whether, if the estate were insufficient to pay both, the United States should be preferred, is not here involved. P. 500.

277 Pa. 242, reversed.

ERROR to judgments of the Supreme Court of Pennsylvania sustaining taxes assessed under the State transfer tax law. Petitions for writs of certiorari in these cases are denied.

*Messrs. George Wharton Pepper* and *George B. Gordon* for plaintiffs in error.

The Supreme Court of Pennsylvania having construed the statute as an exercise of the State's taxing power, it must stand or fall as such; it cannot be saved by an attempt to treat it as an escheat act. *Cope's Estate,* 191 Pa., 1.

In measuring the tax on the right of transmission, Pennsylvania had no right to include in the clear value of the estate tangible articles of personal property which had an actual and readily ascertainable situs in New York and Massachusetts.

When analyzed, a tax on property is seen to be a tax on the thing called ownership, which is merely a person's legally protected interest in the thing owned. A tax on transmission is a tax on the substitution of one person for another in respect of the relation between the person and the thing. While the distinction is entirely thinkable, there is no really sound or substantial reason for reaching in the one case a result different from that reached in the other.

Both before and after the decision in the *Union Transit Case,* 199 U. S. 194, are many decisions of this Court in which decisive emphasis was laid upon the distinction between tangible and intangible property, and where the nature of the tax as being a tax on property or merely a tax measured by the value of property was immaterial. Discussing *Pullman's Palace Car Co.* v. *Penna.,* 141 U. S. 18; *Delaware Lackawanna etc. R. R.* v. *Penna.,* 198 U. S. 341; *Weaver's Estate* v. *State,* 110 Iowa 328; *New York Central* v. *Miller,* 202 U. S. 584; *Southern Pacific* v. *Kentucky,* 222 U. S. 63; *Fidelity and Columbia Trust Co.* v. *Louisville,* 245 U. S., 54; *Bullen* v. *Wisconsin,* 240 U. S., 625; *Wallace* v. *Hines,* 253 U. S., 66.

In all these cases, except the *Pullman Case* and *Wallace* v. *Hines,* the act under review was passed by the State of

the domicile and was either a tax on the ownership of property or a tax on the use or transmission of property. In every case in which the property was intangible personalty the tax was upheld. In every case in which tangible personalty with a situs outside the domiciliary State was either sought to be taxed or to be included in the measure of the tax, the tax was adjudged invalid. The *Pullman Car Case* and the case of *New York Central* v. *Miller,* 202 U. S. 594, are not exceptions.

The limited power of each of the States to reach by taxation tangible personalty physically beyond its boundaries is in marked contrast with the plenary power of the United States to use its jurisdiction over its domiciled citizens as a basis for taxing their tangible personalty wherever it may be. *United States* v. *Bennett,* 232 U. S. 299.

*Blackstone* v. *Miller,* 188 U. S. 189; *Wheeler* v. *New York,* 233 U. S. 434; and *Maxwell* v. *Bugbee,* 250 U. S. 525 discussed and explained as consistent with the principles contended for.

In many of these cases there is more or less reference to one of the basic principles of taxation, which is that the citizen enjoys a protection of person and property, which is a reciprocal of the power of the sovereign to tax him. It is of course not possible to test the validity of a tax act by a specific relation between the amount or nature of the tax and the degree of protection afforded. Where a right which is the subject of tax cannot possibly have been conferred by the taxing State, but exists because of the act of another sovereignty, it may not lawfully be included in the tax. *Louisville Ferry Co.* v. *Kentucky,* 188 U. S. 385. Cf, *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, *Looney* v. *Crane Co.,* 245 U. S. 178.

The right to impose a transfer tax upon personal property must necessarily be based upon the same jurisdictional fact as the taxation of the transfer of real estate.

We submit that it is the law that, while the transfer of intangible personalty can be taxed at the domicile of the owner, either *inter vivos* or upon death, that is true only because of the fiction *mobilia sequuntur personam.* Originally this theory applied to tangibles as well as to intangibles, but it has long since passed away as to any-thing except intangibles. This, because fiction, must yield to fact. These tangible articles, pictures, furniture, household stores, cows, horses, agricultural implements, have a real, physical existence and necessarily have a situs as surely as buildings and lands have. Their situs is in New York and Massachusetts, not in Pennsylvania. Therefore, this tax cannot be sustained upon authority of the maxim *mobilia sequuntur personam,* either under the decisions of this Court or under the decisions of the Supreme Court of Pennsylvania: *Eidman* v. *Martinez,* 184 U. S. 578; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Metropolitan Life Insurance Co.* v. *New Orleans,* 205 U. S. 395; *Commonwealth* v. *Delaware, Lackawanna etc. R. R.,* 145 Pa. 96; *Commonwealth* v. *American Dredging Co.,* 122 Pa. 386; *Hostetter's Estate,* 267 Pa. 193.

It is argued that, since there was property in Pennsylvania which did pass and which was undoubtedly subject to its jurisdiction, the State could impose such conditions as it pleased upon the transfer of that property; that when the residuary legatees came into Pennsylvania to get their share in the residuary estate, the State could say to them: "You shall take only what we see fit to allow you to take, and what you can take is only that which is left after we have deducted an *ad valorem* tax upon the value of all the property, adding to the value of the property within our jurisdiction the value of all real estate and all tangible personal assets located without our jurisdiction."

We submit that the levying of a capital tax, an *ad valorem* tax, a transfer tax, based upon any such theory

and actually producing such a result, is unjust, is con-
fiscatory, is a violation of due process of law. The estab-
lishment of such a proposition would mean the overturn-
ing of the whole theory of taxation. At the decedent's
death these tangible articles of personal property passed
by virtue of the laws of Massachusetts and New York,
not of Pennsylvania. *Harvey* v. *Richards,* 1 Mason, 381;
*Blackstone* v. *Miller,* 188 U. S. 189; *In re Lorillard Griffiths*
v. *Catforth,* 1922, 2 Ch., 638. It is a question for the
common law of New York and Massachusetts how far
they will recognize the laws of Pennsylvania as to the
validity of a Pennsylvania will and of the succession to
property located in New York and Massachusetts, and
in so far as they do recognize it, they do so because such
is the common law of New York and Massachusetts, not
because it is the law of Pennsylvania. A State can not
say that the tangibles which are in the State and within
its taxing powers may be valued, for tax purposes, not at
their actual value, but at the value of all decedent's estate
everywhere. The legislature of Pennsylvania manifestly
never intended to do so, but in plain language attempted
to tax the transfer of property outside of the State. But
be this as it may, we submit with confidence that no court
in Christendom ever sustained any such proposition. It
is not due process of law. *Knowlton* v. *Moore,* 178 U. S.
41, 76; *Maxwell* v. *Bugbee,* 250 U. S. 525, 529.

Upon the precise point there is no case decided by this
Court or any other federal court. There is dictum in
*Keeney* v. *New York,* 222 U. S. 525, 537. The decisions
of the state courts are conflicting. *Weaver's Estate,* 110
Iowa, 328; *State* v. *Brevard,* 62 N. C. 141; *Joyslin's
Estate,* 76 Vermont, 88; *Matter of Estate of Swift,* 137
N. Y., 77. Distinguishing: *Carpenter* v. *Pennsylvania,* 17
How. 456; *Hartman's Estate,* 70 N. J. Eq. 664; *State* v.
*Spokane & Eastern Trust Co.* (Wash.), 211 Pac. 734.

The State of Pennsylvania has no power to levy an
estate tax on the value of shares of capital stock of cor-

porations incorporated under the laws of other States without deducting the paramount taxes exacted by those other States as a transfer inheritance tax on such shares of stock. *The Matter of the Estate of Henry Miller,* 184 Cal. 674.

The State of Pennsylvania has no power to levy an estate tax on the value of the whole estate without deducting the paramount estate tax exacted by the United States. In the first place, this is inconsistent with the paramount taxing power of the United States. (Discussing the opinion of the court below in this case and in *Kirkpatrick's Estate,* 275 Pa. 271, in contrast with *Knowlton* v. *Moore,* 178 U. S. 41.) A state statute sustainable only upon a theory inconsistent with federal supremacy is invalid *per se,* even if in a particular case there happens to be enough money to pay the demands of both sovereignties.

In the second place, refusal to allow the deduction conflicts with the due process clause of the Fourteenth Amendment, both because of the injustice of the measure of the tax, and because the tax is thereby extended to property withdrawn from the state jurisdiction. *Jennie Smith's Estate,* 29 Pa. Dist. Rep. 917; *Hazard* v. *Bliss,* 43 R. I., dissent 431; *Hollis* v. *Treasurer and Receiver General,* 242 Mass. 163; *Flaherty* v. *Hanson,* 215 U. S. 515.

The State cannot directly impose a tax upon the portion of Mr. Frick's estate which the Federal Government has expropriated. It cannot do this, whether the Federal Government took it in kind or took it in money.

*Mr. David A. Reed,* with whom *Messrs. George W. Woodruff,* Attorney General of Pennsylvania, and *Maynard Teall* were on the brief, for defendant in error.

The State of domicile of a decedent may include in the measure of its transfer inheritance tax the value of all the personal property of such decedent, including tangibles

situated in other States. It is a fundamental principle that real estate descends pursuant to the law of its situs, without reference to the law of the owner's domicile, and that personal property, whether tangible or intangible, and wheresoever situate, descends pursuant to the law of the owner's domicile. The law of the domicile, therefore, may impose upon the transfer of tangible personalty such conditions by way of taxation or otherwise as it may deem expedient, provided the conditions are not forbidden by constitutional restrictions. It is mere metaphysics to argue whether the transfer is effected by virtue of the law of the situs or the law of the domicile; the fact is that tangible personal property passes according to and to no greater extent than provided by the law of the domicile. Wherever the property may be, the court administering it looks first to the law of the domicile. *Bullen* v. *Wisconsin*, 240 U. S. 625.

It is admitted that Pennsylvania may not constitutionally impose a tax upon tangible personal property situated outside the State. *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194. But the Pennsylvania tax is not imposed upon any specific property whatever. A sum of money computed upon the value of the estate, such value being determined as of the date of death, is lawfully exacted by the Commonwealth for a privilege created by statute. The tax is an excise upon the privilege of transfer. It is not upon the privilege of receiving—affirmative legislation is not needed to permit acceptance of a gift—but upon the statutory privilege of transferring or transmitting property by will or intestacy. *Kirkpatrick's Estate*, 275 Pa. 271; *Knowlton* v. *Moore*, 178 U. S. 41; *United States* v. *Perkins*, 163 U. S. 625; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283.

That such transfer inheritance taxes are not property taxes is necessarily implied in the conclusion that United States bonds or other clearly non-taxable securities are

properly included in the property upon which the tax is computed. *Plummer* v. *Coler*, 178 U. S. 115. Similarly, no one has doubted that the federal inheritance tax should be computed upon the obligations of a State, which the federal government may not tax directly.

Since a transfer inheritance tax is not a property tax, and since property which, by reason of its tax-exempt character, is beyond the jurisdiction of the taxing State may be included in the property upon the value of which the tax is computed, it would seem to follow as a corollary that personal property which, by reason of its geographical situation, is beyond the jurisdiction of the taxing State may, under some circumstances, be included. *Maxwell* v. *Bugbee*, 250 U. S. 525.

Where the situs of the property transferred is outside the taxing State, and the decedent was a non-resident of the taxing State, the transfer is not taxable. *Hood's Estate*, 21 Pa. 106. Where the property is real estate situated outside the taxing State, the transfer is not taxable. *DeWitt's Estate*, 266 Pa. 548; *Marr's Estate*, 240 Pa. 38. Where the property is intangible, the transfer is taxable, since the property passes according to the law of the domiciliary state. *Bullen* v. *Wisconsin*, 240 U. S. 625; *Blackstone* v. *Miller*, 188 U. S. 189; *Greves* v. *Shaw*, 173 Mass. 205; *Hostetter's Estate*, 267 Pa. 193. Where the property is a chose in action and therefore intangible, but is evidenced by a promissory note and hence has no existence apart from the paper upon which the obligation is written, and the paper has an actual physical situs within the taxing State, there, even though the deceased holder of the note was a non-resident of the taxing State, and the maker is also a non-resident, the note itself is within the control of the taxing State, and the transfer of it may be taxed. *Wheeler* v. *Sohmer*, 233 U. S. 434. Where the property is tangible personalty

situated in the taxing State, of which the decedent was a non-resident, since the property is within the jurisdiction and control of the taxing State, the transfer is taxable. *Coe* v. *Erroll,* 116 U. S. 517; *Blackstone* v. *Miller, supra.* Where the taxing State is also the State of the decedent's domicile, and where the property is tangible personalty having a situs outside the State—the case at bar,—there again the transfer is taxable. *Blackstone* v. *Miller, supra.*

In *Bullen* v. *Wisconsin, supra,* it was held that the domiciliary State could constitutionally impose an inheritance tax on the transfer of bonds kept outside the State. In *Carpenter* v. *Pennsylvania,* 17 How. 456, it was held that personal property situated outside the domiciliary State was subject to the inheritance tax thereof. The property expressly described in the report consisted of intangibles. It is not altogether clear whether any tangible property was involved, but the opinion does not suggest that the point would be material. In *Hartman's Estate,* 70 N. J. Eq. 664, it was squarely held that the transfer of tangible personalty owned by a resident decedent but situated outside the State, was taxable. In *Swift's Estate,* 137 N. Y. 77, the Court of Appeals of New York, with one dissent, reached the same conclusion. The same decision was reached by the Supreme Court of Washington in *Sherwood's Estate,* 211 Pac. Rep. 734. In *Weaver's Estate,* 110 Iowa 328, it was held that the transfer of certain tangibles having a foreign situs was not subject to state inheritance tax, but the decision was based entirely upon the intent of the legislature as expressed in the statute.

The law of England is in accord with the authorities above cited. *Matter of the Estate of Ewin,* 1 Crompton and Jervis, 150; *Attorney General* v. *Napier,* 6 Exch. Rep. 216; *Re Duchess of Manchester,* 81 L. Jour. Rep. N. S., 329 (1912).

The fact is that, though the tangible personalty here in question is situated in New York and Massachusetts,

it cannot be transferred by inheritance except with reference to the provisions of Pennsylvania law. The theory of plaintiffs in error is that Massachusetts and New York statutes have incorporated Pennsylvania law by reference, thereby changing it to Massachusetts or New York law. Our own theory is that by the comity of States (in this case evidenced by statutes) and the traditions of Anglo-Saxon jurisprudence, the domiciliary law is given extra-territorial effect in this situation. But whether the correct explanation be the one theory or the other, there can be no doubt of the fact, namely, that the transfer of this property cannot be effected without reference to the provisions of Pennsylvania law. That law is "needed to establish the inheritance." *Bullen* v. *Wisconsin, supra.* Plaintiffs in error lay special emphasis on the fact that statutes of New York and Massachusetts provide in express words that the property shall pass according to Pennsylvania law. But can it be doubted that the provisions of Pennsylvania law would be given effect in New York and Massachusetts even in the absence of such statutes? The statutes are merely declaratory of a familiar principle.

Plaintiffs in error have cited several cases wherein this Court has held to be invalid state statutes imposing capital stock and franchise taxes on domestic corporations when property having a situs outside the taxing State was included in the property taxed. Those were cases of taxes on property, hence have no application here, because the inheritance transfer tax of Pennsylvania is not a tax on property. *Union Refrigerator Case,* 199 U. S. at 211.

In *Looney* v. *Crane Company,* 245 U. S. 178, and *Wallace* v. *Hines,* 253 U. S. 66, involving corporation excise taxes held invalid because property outside the taxing State was included in measuring the amount, the complaining corporations were foreign corporations. The cor-

poration laws of foreign States are neither incorporated by reference nor given extraterritorial effect.

Whether a decedent's property be transferred by will or intestate succession, the real estate passes in accordance with the law of the situs—what the domiciliary law may provide is immaterial. But if the property be personalty, then, whether it be tangible or intangible, pictures or stocks, the persons entitled must be determined by reference to the provisions of the domiciliary law. As a matter of history and practice the line is drawn between real estate and personal property. *State Tax on Foreign Held Bonds,* 15 Wall. 300; *Bullen* v. *Wisconsin, supra.*

Inheritance taxes paid to Pennsylvania, to other States, and to the United States, are not deductible. *Kirkpatrick's Estate,* 275 Pa. 271. The stocks were transferred to somebody at the moment of the testator's death; if that were not so, they would have been for a considerable period without an owner. Pennsylvania was not required to adopt as the measure of its tax the value of the stocks to the executors, or their value for administration purposes in Pennsylvania, but very properly adopted market value at the date of the testator's death—when his interest ceased. As was pointed out by this Court in several cases above cited, the transfer of title to stocks of foreign corporations owned by this estate could not be effected without invoking the provisions of Pennsylvania law. *Blackstone* v. *Miller,* 188 U. S. 189, 207. The fallacy of the argument that the value of foreign property is reduced by the amount of inheritance taxes paid to foreign States lies in failing to observe the fundamental principle of inheritance taxation, namely, that the tax is not upon or out of the property, but upon the privilege of transfer. As well might it be argued that an inheritance tax computed upon the value of an estate including United States bonds is a taking or extinguishing of part of the value of the bonds. *Plummer* v. *Coler, supra.*

The argument that the federal estate tax must be deducted is based principally upon two propositions: First, Pennsylvania's refusal to deduct is an interference with the "paramount" taxing power of the United States; second, it is in violation of the due process clause of the Fourteenth Amendment. See *New York Trust Co.* v. *Eisner,* 256 U. S. 345. If either the state or the federal government be "paramount" in this field, it is t state and not the federal government. The privilege of transfer is granted, affirmatively and exclusively, by state legislation. Take that legislation away, and the privilege now taxed by Congress does not exist. If the State does not take the privilege away entirely, but limits it, as, for example, by conditioning it upon payment of a tax to the State, the privilege taxed by Congress is the privilege as so limited and so conditioned. The condition inheres in the privilege, and if the condition is not performed, there is no privilege for Congress to tax. Thus the State comes first. *Hyde* v. *Woods,* 94 U. S. 523. If plaintiffs in error are correct in their argument that Pennsylvania has interfered with the "paramount" taxing power of the United States, it is not enough that she deduct the amount of the federal tax. The State should withdraw entirely from the field of inheritance taxation; for if the federal taxing power in that field is "paramount," it is difficult to see why it is not also exclusive so long as Congress sees fit to tax the transfer of estates— as in the case of bankruptcy. That result would be anomalous, to say the least, since the subject of the tax is created by the State exclusively. So long ago as 1824, in *Gibbons* v. *Ogden,* 9 Wheat, 1, 198, Mr. Chief Justice Marshall pointed out that neither federal nor state taxing power is "paramount" in respect to the other. The argument that Pennsylvania's refusal to deduct the federal tax violates the due process clause of the Fourteenth Amendment reduces itself to the proposition that, before

the state tax accrues, the estate has already been reduced by the amount of the federal tax. This Court answered that argument very fully in *New York Trust Co.* v. *Eisner, supra.*

This question of deducting the taxes of other jurisdictions is not a new one. It has been raised in many state courts, and always has been dealt with as a problem of construing the particular statute. *Matter of Gihon,* 169 N. Y. 443; *Succession of Gheens,* 148 La. 1017; *Week's Estate,* 169 Wis. 316; *Bierstadt Estate,* 178 App. Div. (N. Y.) 836; *Penfold's Estate,* 216 N. Y. 171; *Matter of Sherman,* 179 App. Div. 497 (affirmed 222 N. Y. 540); *Sanford's Estate,* 188 Iowa 833; *Hazard* v. *Bliss,* 43 R. I. 431; *Kirkpatrick's Estate,* 275 Pa. 271; *Hooper* v. *Shaw,* 176 Mass. 190; *State* v. *Probate Court,* 97 Minn. 532; *People* v. *Pasfield,* 284 Ill. 450; *People* v. *Northern Trust Co.,* 289 Ill. 475; *Knight's Estate,* 261 Pa. 537; *Otto's Estate,* 257 Pa. 155; *Roebling's Estate,* 89 N. J. Eq. 163; *State* v. *First Calumet Trust & Savings Bank,* 71 Ind. App. 467; *People* v. *Bemis,* 68 Col. 48; *Corbin* v. *Townshend,* 92 Conn. 501; *Old Colony Trust Co.* v. *Burrell,* 238 Mass. 544.

*New York Tr. Co.* v. *Eisner,* 256 U. S. 345, held that state legacy taxes were not deductible before computation of the federal tax, and Revenue Act 1921, § 403(a) so provides.

*Messrs. Carl Sherman,* Attorney General of New York, and *Seth T. Cole* filed a brief as *amici curiae,* for the State of New York, by special leave of Court.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

These four cases involve the constitutional validity of particular features of a statute of Pennsylvania imposing a tax on the transfer of property by will or intestate laws. Act No. 258; Pa. Laws 1919, 521.

Henry C. Frick, domiciled in Pennsylvania, died testate December 2, 1919, leaving a large estate. By his will he disposed of the entire estate—giving about 53 per cent. for charitable and public purposes and passing the rest to or for the use of individual beneficiaries. Besides real and personal property in Pennsylvania, the estate included tangible personalty having an actual situs in New York, tangible personalty having a like situs in Massachusetts, and various stocks in corporations of States other than Pennsylvania. The greater part of the tangible personalty in New York,[1] having a value of $13,132,391.00, was given to a corporation of that State for the purposes of a public art gallery, and the other part,[2] having a value of $77,818.75, to decedent's widow. The tangible personalty in Massachusetts,[3] having a value of $325,-534.25, was also given to the widow. The will was probated in Pennsylvania, and letters testamentary were granted there. It was also proved in New York and Massachusetts, and ancillary letters were granted in those States. Under the laws of the United States the executors were required to pay to it, and did pay, an estate tax of $6,338,898.68; and under the laws of Kansas, West Virginia and other States they were required to pay to such States, and did pay, large sums in taxes imposed as a prerequisite to an effective transfer from a non-resident deceased of stocks in corporations of those States.

The Pennsylvania statute provides that where a person domiciled in that State dies seized or possessed of

---

[1] This consisted of rare paintings, rugs, furniture, bronzes, porcelains and other art treasures known as "The Frick Collection" and housed in a building in New York City specially constructed for the purpose.

[2] This consisted of furniture, household furnishings, automobiles, tools, etc., in Mr. Frick's New York house and garage.

[3] This consisted of paintings, other objects of art, furniture, household furnishings, farming implements, etc., on Mr. Frick's estate at Prides Crossing.

property, real or personal, a tax shall be laid on the trans-
fer of the property from him by will or intestate laws,
whether the property be in that State or elsewhere; that
the tax shall be 2 per cent. of the clear value of so much
of the property as is transferred to or for the use of desig-
nated relatives of the decedent and 5 per cent. of the
clear value of so much of it as is transferred to or for the
use of others; and that the clear value shall be ascer-
tained by taking the gross value of the estate and deduct-
ing therefrom the decedent's debts and the expenses of
administration, but without making any deduction for
taxes paid to the United States or to any other State.

In applying this statute to the Frick estate the taxing
officers included the value of the tangible personalty in
New York and Massachusetts in the clear value on which
they computed the tax; and in fixing that value refused
to make any deduction on account of the estate tax paid
to the United States or the stock-transfer taxes paid to
other States. In proceedings which reached the Supreme
Court of the State the action of the taxing officers and the
resulting tax were upheld by that court, 277 Pa. 242. The
matter was then brought here on writs of error under
§ 237 of the Judicial Code.

The plaintiffs in error are the executors and an inter-
ested legatee. They contended in the state court, and
contend here, that in so far as the Pennsylvania statute
attempts to tax the transfer of tangible personal property
having an actual situs in States other than Pennsylvania
it transcends the power of that State, and thereby contra-
venes the due process of law clause of the Fourteenth
Amendment to the Constitution of the United States.
This precise question has not been presented to this
Court before, but there are many decisions dealing with
cognate questions which point the way to its solution.
These decisions show, first, that the exaction by a State
of a tax which it is without power to impose is a taking

of property without due process of law in violation of the
Fourteenth Amendment; secondly, that while a State
may so shape its tax laws as to reach every object which
is under its jurisdiction it cannot give them any extra-
territorial operation; and, thirdly, that as respects tangi-
ble personal property having an actual situs in a par-
ticular State, the power to subject it to state taxation
rests exclusively in that State, regardless of the domicil
of the owner. *Cleveland, Painesville and Ashtabula
R. R. Co.* v. *Pennsylvania,* 15 Wall. 300, 319, 325; *Louis-
ville and Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S.
385, 396; *Old Dominion Steamship Co.* v. *Virginia,* 198
U. S. 299; *Delaware, Lackawanna and Western R. R. Co.*
v. *Pennsylvania,* 198 U. S. 341, 356; *Union Refrigerator
Transit Co.* v. *Kentucky,* 199 U. S. 194; *Western Union
Telegraph Co.* v. *Kansas,* 216 U. S. 1, 38; *International
Paper Co.* v. *Massachusetts,* 246 U. S. 135, 142.

In *Union Refrigerator Transit Co.* v. *Kentucky* the
question presented was whether, consistently with the
restriction imposed by the due process of law clause of
the Fourteenth Amendment, the State of Kentucky could
tax a corporation of that State upon its tangible personal
property having an actual situs in other States. The
question was much considered, prior cases were reviewed,
and a negative answer was given. The grounds for the
decision are reflected in the following excerpts from the
opinion:

"It is also essential to the validity of a tax that the
property shall be within the territorial jurisdiction of the
taxing power. Not only is the operation of state laws
limited to persons and property within the boundaries of
the State, but property which is wholly and exclusively
within the jurisdiction of another State, receives none of
the protection for which the tax is supposed to be the
compensation. This rule receives its most familiar illus-
tration in the cases of land which, to be taxable, must be

within the limits of the State.   Indeed, we know of no case where a legislature has assumed to impose a tax upon land within the jurisdiction of another State, much less where such action has been defended by any court.   It is said by this Court in the *Foreign-held Bond case,* 15 Wall. 300, 319, that no adjudication should be necessary to establish so obvious a proposition as that property lying beyond the jurisdiction of a State is not a subject upon which her taxing power can be legitimately exercised.   The argument against the taxability of land within the jurisdiction of another State applies with equal cogency to tangible personal property beyond the jurisdiction.   It is not only beyond the sovereignty of the taxing State, but does not and cannot receive protection under its laws.   .   .   .

"The arguments in favor of the taxation of intangible property at the domicile of the owner have no application to tangible property.   The fact that such property is visible, easily found and difficult to conceal, and the tax readily collectible, is so cogent an argument for its taxation at its *situs,* that of late there is a general consensus of opinion that it is taxable in the State where it is permanently located and employed and where it receives its entire protection, irrespective of the domicil of the owner.   .   .   ."

"The adoption of a general rule that tangible personal property in other States may be taxed at the domicil of the owner involves possibilities of an extremely serious character.   Not only would it authorize the taxation of furniture and other property kept at country houses in other States or even in foreign countries, [and] of stocks of goods and merchandise kept at branch establishments when already taxed at the State of their *situs,* but of that enormous mass of personal property belonging to railways and other corporations which might be taxed in the State where they are incorporated, though their char-

ters contemplated the construction and operation of roads wholly outside the State, and sometimes across the continent, and when in no other particular they are subject to its laws and entitled to its protection."

In *United States* v. *Bennet*, 232 U. S. 299, 306, where this Court had occasion to explain the restrictive operation of the due process of law clause of the Fourteenth Amendment, as applied to the taxation by one State of property in another, and to distinguish the operation of the like clause of the Fifth Amendment, as applied to the taxation by the United States of a vessel belonging to one of its citizens and located in foreign waters, it was said:

" The application to the States of the rule of due process relied upon comes from the fact that their spheres of activity are enforced and protected by the Constitution and therefore it is impossible for one State to reach out and tax property in another without violating the Constitution, for where the power of the one ends the authority of the other begins. But this has no application to the Government of the United States so far as its admitted taxing power is concerned. It is coextensive with the limits of the United States; it knows no restriction except where one is expressed in or arises from the Constitution and therefore embraces all the attributes which appertain to sovereignty in the fullest sense. Indeed the existence of such a wide power is the essential resultant of the limitation restricting the States within their allotted spheres . . ."

Other decisions show that the power to regulate the transmission, administration, and distribution of tangible personal property on the death of the owner rests with the State of its situs, and that the laws of other States have no bearing save as that State expressly or tacitly adopts them—their bearing then being attributable to such adoption and not to any force of their own. *Mager*

v. *Grima,* 8 How. 490, 493; *Crapo* v. *Kelly,* 16 Wall. 610, 630; *Kerr* v. *Moon,* 9 Wheat. 565, 571; *Blackstone* v. *Miller,* 188 U. S. 189, 204; *Bullen* v. *Wisconsin,* 240 U. S. 625, 631; *Bank of Augusta* v. *Earle,* 13 Pet. 519, 589; *Hilton* v. *Guyot,* 159 U. S. 113, 163, 166.

The Pennsylvania statute is a tax law, not an escheat law. This is made plain by its terms and by the opinion of the state court. The tax which it imposes is not a property tax but one laid on the transfer of property on the death of the owner. This distinction is stressed by counsel for the State. But to impose either tax the State must have jurisdiction over the thing that is taxed, and to impose either without such jurisdiction is mere extortion and in contravention of due process of law. Here the tax was imposed on the transfer of tangible personalty having an actual situs in other States—New York and Massachusetts. This property, by reason of its character and situs, was wholly under the jurisdiction of those States and in no way under the jurisdiction of Pennsylvania. True, its owner was domiciled in Pennsylvania, but this neither brought it under the jurisdiction of that State nor subtracted anything from the jurisdiction of New York and Massachusetts. In these respects the situation was the same as if the property had been immovable realty. The jurisdiction possessed by the States of the situs was not partial but plenary, and included power to regulate the transfer both *inter vivos* and on the death of the owner, and power to tax both the property and the transfer.

Mr. Justice Story said in his work on Conflict of Laws, § 550: "A nation within whose territory any personal property is actually situate has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there. It may regulate its transfer, and subject it to process and execution, and provide for and control the uses and dis-

position of it, to the same extent that it may exert its authority over immovable property." And in *Pullman's Car Company* v. *Pennsylvania,* 141 U. S. 18, 22, where this Court held the actual situs of tangible personalty rather than the domicil of its owner to be the true test of jurisdiction and of power to tax, it was said: "No general principles of law are better settled, or more fundamental, than that the legislative power of every State extends to all property within its borders, and that only so far as the comity of that State allows can such property be affected by the law of any other State. The old rule expressed in the maxim *mobilia sequuntur personam,* by which personal property was regarded as subject to the law of the owner's domicil, grew up in the Middle Ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs,* the law of the place where the property is kept and used."

In support of the tax counsel for the State refer to statutes of New York and Massachusetts evidencing an election by those States to accept and give effect to the domiciliary law regulating the transfer of personal property of owners dying while domiciled in other States; and from this they contend that the transfer we are considering was brought under the jurisdiction of Pennsylvania and made taxable there. We think the contention is not sound. The statutes do not evidence a surrender or abandonment of jurisdiction, if that were admissible. On the contrary, they in themselves are an assertion of jurisdiction and an exercise of it. They declare what law shall apply and require the local courts to give effect to it. And it should be observed that here the property was

administered in those courts and none of it was taken to the domiciliary State. Obviously the accepted domiciliary law could not in itself have any force or application outside that State. Only in virtue of its express or tacit adoption by the States of the situs could it have any force or application in them. Through its adoption by them it came to represent their will and this was the sole basis of its operation there. Burdick on American Constitution, § 257. In keeping with this view New York and Massachusetts both provide for the taxation of transfers under the adopted domiciliary law; and they have imposed and collected such a tax on the transfer we are now considering.

Counsel for the State cite and rely on *Blackstone* v. *Miller,* 188 U. S. 189, and *Bullen* v. *Wisconsin,* 240 U. S. 625. Both cases related to intangible personalty, which has been regarded as on a different footing from tangible personalty. When they are read with this distinction in mind, and also in connection with other cases before cited, it is apparent that they do not support the tax in question.

We think it follows from what we have said that the transfer of the tangible personalty in New York and Massachusetts occurred under and in virtue of the jurisdiction and laws of those States and not under the jurisdiction and laws of Pennsylvania, and therefore that Pennsylvania was without power to tax it.

One ground on which the state court put its decision was that, in taxing the transfer of the property which the decedent owned in Pennsylvania, it was admissible to take as a basis for computing the tax the combined value of that property and the property in New York and Massachusetts. Of course, this was but the equivalent of saying that it was admissible to measure the tax by a standard which took no account of the distinction between what the State had power to tax and what it had

no power to tax, and which necessarily operated to make the amount of the tax just what it would have been had the State's power included what was excluded by the Constitution. This ground, in our opinion, is not tenable. It would open the way for easily doing indirectly what is forbidden to be done directly, and would render important constitutional limitations of no avail. If Pennsylvania could tax according to such a standard other States could. It would mean, as applied to the Frick estate, that Pennsylvania, New York and Massachusetts could each impose a tax based on the value of the entire estate, although severally having jurisdiction of only parts of it. Without question each State had power to tax the transfer of so much of the estate as was under its jurisdiction, and also had some discretion in respect of the rate; but none could use that power and discretion in accomplishing an unconstitutional end, such as indirectly taxing the transfer of the part of the estate which was under the exclusive jurisdiction of others. *Western Union Telegraph Co. v. Foster,* 247 U. S. 105, 114, and cases cited; *Looney* v. *Crane Company,* 245 U. S. 178, 188; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, 141; *Air-Way Corporation v. Day,* 266 U. S. 71, 81; *Wallace* v. *Hines,* 253 U. S. 66, 69; *Louisville and Jeffersonville Ferry Company* v. *Kentucky,* 188 U. S. 385, 395.

The state court cited in support of its view *Maxwell* v. *Bugbee,* 250 U. S. 525, 539. The case is on the border line, as is evidenced by the dissent of four members of the Court. But it does not go so far as its citation by the state court suggests. The tax there in question was one imposed by New Jersey on the transfer of stock in a corporation of that State. The stock was part of the estate of a decedent who had resided elsewhere. The state statute, described according to its essence, provided for a tax graduated in rate according to the value of the entire estate, and required that where the estate was

partly within and partly without the State the transfer of the part within should bear a proportionate part of what according to the graduated rate would be the tax on the whole. The only bearing which the property without the State had on the tax imposed in respect of the property within was that it affected the rate of the tax. Thus, if the entire estate had a value which put it within the class for which the rate was three per cent, that rate was to be applied to the value of the property within the State in computing the tax on its transfer, although its value separately taken would put it within the class for which the rate was two per cent. There was no attempt, as here, to compute the tax in respect of the part within the State on the value of the whole. The Court sustained the tax, but distinctly recognized that the State's power was subject to constitutional limitations, including the due process of law clause of the Fourteenth Amendment, and also that it would be a violation of that clause for a State to impose a tax on a thing within its jurisdiction " in such a way as to really amount to taxing that which is beyond its authority."

Another case cited by the state court is *Plummer* v. *Coler*, 178 U. S. 115, where it was held that a State, in taxing the transfer by will or descent of property within its jurisdiction, might lawfully measure the tax according to the value of the property, even though it included tax-exempt bonds of the United States; and this because the tax was not on the property but on the transfer. We think the case is not in point here. The objection to the present tax is that both the property and the transfer were within the jurisdiction of other States and without the jurisdiction of the taxing State.

For the reasons which have been stated it must be held that the Pennsylvania statute, in so far as it attempts to tax the transfer of tangible personalty having an actual situs in other States, contravenes the due process of law clause of the Fourteenth Amendment and is invalid.

The next question relates to the provision which re-
quires that, in computing the value of the estate for the
purpose of fixing the amount of the tax, stocks in corpora-
tions of other States shall be included at their full value
without any deduction for transfer taxes paid to those
States in respect of the same stocks.

The decedent owned many stocks in corporations of
States, other than Pennsylvania, which subjected their
transfer on death to a tax and prescribed means of en-
forcement which practically gave those States the status
of lienors in possession.[4] As those States had created the
corporations issuing the stocks, they had power to impose
the tax and to enforce it by such means, irrespective of the
decedent's domicile and the actual situs of the stock cer-
tificates. Pennsylvania's jurisdiction over the stocks
necessarily was subordinate to that power. Therefore to
bring them into the administration in that State it was
essential that the tax be paid. The executors paid it out
of moneys forming part of the estate in Pennsylvania and
the stocks were thereby brought into the administration
there. We think it plain that such value as the stocks
had in excess of the tax is all that could be regarded as
within the range of Pennsylvania's taxing power. *Estate
of Henry Miller,* 184 Cal. 674, 683. So much of the value
as was required to release the superior claim of the other
States was quite beyond Pennsylvania's control. Thus
the inclusion of the full value in the computation on which
that State based its tax, without any deduction for the tax
paid to the other States, was nothing short of applying
that State's taxing power to what was not within its range.
That the stocks, with their full value, were ultimately
brought into the administration in that State does not

---

[4] The nature of the tax and the provisions adopted for enforcing
it are illustrated by c. 357, §§ 1, 2, 13, Laws Kansas 1915, p. 452;
c. 33, §§ 1, 6, 7, Barnes' West Virginia Code, p. 586.

help. They were brought in through the payment of the tax in the other States out of moneys of the estate in Pennsylvania. The moneys paid out just balanced the excess in stock value brought in. Yet in computing the tax in that State both were included.

We are of opinion that in so far as the statute requires that stocks in corporations of other States be included at their full value, without deducting the tax paid to those States, it exceeds the power of the State and thereby infringes the constitutional guaranty of due process of law.

The remaining question relates to the provision declaring that, in determining the value of the estate for the purpose of computing the tax, there shall be no deduction of the estate tax paid to the United States. The plaintiffs in error contend that this provision is invalid, first, as being inconsistent with the constitutional supremacy of the United States, and, secondly, as making the state tax in part a tax on the federal tax.

In support of the contention we are referred to several cases in which state courts have held the federal tax should be deducted in determining the value on which such a state tax is computed. But the cases plainly are not in point. In them the state courts were merely construing an earlier type of statute requiring that the state tax be computed on the clear or net value of the estate and containing no direction respecting the deduction of the federal tax. An earlier Pennsylvania statute of that type was so construed. Later statutes in the same States expressly forbidding any deduction of the federal tax have been construed according to their letter. This is true of the present Pennsylvania statute. The question here is not how the statute shall be construed, but whether, as construed by the state court, it is open to the constitutional objections urged against it.

While the federal tax is called an estate tax and the state tax is called a transfer tax, both are imposed as

excises on the transfer of property from a decedent and both take effect at the instant of transfer. Thus both are laid on the same subject, and neither has priority in time over the other. Subject to exceptions not material here, the power of taxation granted to the United States does not curtail or interfere with the taxing power of the several States. This power in the two governments is generally so far concurrent as to render it admissible for both, each under its own laws and for its own purposes, to tax the same subject at the same time. A few citations will make this plain. In *Gibbons* v. *Ogden,* 9 Wheat. 1, 199, Chief Justice Marshall, speaking for this Court, said: "Congress is authorized to lay and collect taxes, etc., to pay the debts, and provide for the common defense and general welfare of the United States. This does not interfere with the power of the States to tax for the support of their own governments; nor is the exercise of this power by the States an exercise of any portion of the power that is granted to the United States. In imposing taxes for State purposes, they are not doing what Congress is empowered to do. Congress is not empowered to tax for those purposes which are within the exclusive province of the States. When, then, each government exercises the power of taxation, neither is exercising the power of the other." Mr. Justice Story, in his Commentaries on the Constitution, § 1068, said: "The power of Congress, in laying taxes, is not necessarily or naturally inconsistent with that of the States. Each may lay a tax on the same property, without interfering with the action of the other." And in *Knowlton* v. *Moore,* 178 U. S. 41, 58–60, Mr. Justice White, speaking for this Court, said that "under our constitutional system both the national and state governments, moving in their respective orbits, have a common authority to tax many and diverse objects;" and he further pointed out that the transfer of property on death "is a usual subject of taxation" and one which falls within that common authority.

With this understanding of the power in virtue of which the two taxes are imposed, we are of opinion that neither the United States nor the State is under any constitutional obligation in determining the amount of its tax to make any deduction on account of the tax of the other. With both the matter of making such a deduction rests in legislative discretion. In their present statutes both direct that such a deduction be not made. It is not as if the tax of one, unless and until paid, presented an obstacle to the exertion of the power of the other. Here both had power to tax and both exercised it as of the same moment. Neither encroached on the sphere or power of the other. The estate out of which each required that its tax be paid is much more than ample for the payment of both taxes. No question of supremacy can arise in such a situation. Whether, if the estate were not sufficient to pay both taxes, that of the United States should be preferred (see *Lane County* v. *Oregon,* 7 Wall. 71, 77) need not be considered. That question is not involved here.

The objection that when no deduction is made on account of the federal tax, the state tax becomes to that extent a tax on the federal tax and not a tax on the transfer is answered by what already has been said. But by way of repetition it may be observed that what the State is taxing is the transfer of particular property, not such property depleted by the federal tax. The two taxes were concurrently imposed and stand on the same plane, save as the United States possibly might have a preferred right of enforcement if the estate were insufficient to pay both.

In conclusion we hold, first, that the value of the tangible personalty in New York and Massachusetts should not have been included in determining the clear value on which the Pennsylvania tax was computed; secondly, that in determining such clear value the stocks in corporations

of other States should not have been included at their full value without deducting the transfer tax paid to such States in respect of those stocks; and thirdly, that there was no error in refusing to make any deduction from the clear value on account of the estate tax imposed by the United States.

Petitions for certiorari were presented in these cases, but as the cases are properly here on writs of error, the petitions will be denied.

> *Judgments reversed on writs of error.*
> *Petitions for certiorari denied.*