**CITY BANK FARMERS' TRUST CO. v. SCHNADER, Attorney General of Pennsylvania, et al.**

No. 7395.

District Court, E. D. Pennsylvania.
March 29, 1934.

Leslie M. Swope, Henry S. Drinker, Jr., and H. Gordon McCouch, all of Philadelphia, Pa., and Wolcott P. Robbins, of New York City, for plaintiff.

Lucien B. Carpenter and Herman J. Goldberg, Deputy Attys. Gen., and William A. Schnader, Atty. Gen., for defendant.

Before THOMPSON, Circuit Judge, and DICKINSON and KIRKPATRICK, District Judges, sitting as a special court.

KIRKPATRICK, District Judge.

This case involves the taxable situs of tangible personal property. The occasion for imposing the tax is the transfer of the property by death of the owner.

In the case of intangibles the law is now well settled that the state in which the owner is domiciled and no other may impose an inheritance tax. Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A. L. R. 1000; First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 175, 76 L. Ed. 313, 77 A. L. R. 1401. The facts upon which these decisions were rendered did not involve the taxation of tangibles. In the opinion in the Minnesota Case, the court made it perfectly clear that the taxable situs of such property depends upon entirely different considerations.

The outstanding decisions governing the taxation of tangible personalty are Gromer v. Standard Dredging Company, 224 U. S. 362, 32 S. Ct. 499, 503, 56 L. Ed. 801, Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316, and Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749. The first of these cases recognized and applied the general rule "that tangible personal property is subject to taxation by the state in which it is, no matter where the domicil of the owner may be." The court pointed out that there was nothing in the case to show that the property (certain machinery and boats) was only temporarily within the territorial limits of the jurisdiction which proposed to tax it. The import of the decision is that, where nothing appears in the case beyond the facts that the property is in one jurisdiction and the domicile of the owner in the other, the property is taxable where it is. It was really upon this point that the court divided; the minority holding, in substance, that the presumption is the other way, that all personal property is ordinarily taxable at the owner's domicile, and that, if it is to be taxed somewhere else, it must be shown that its location in the taxing state was not "of a temporary or fleeting character."

In the Frick Case the expression "where it is" as defining the taxable situs of such property was exchanged for "actual situs." Actual situs means a little more than simply the place where property is. It excludes the idea of mobile personal property which happens to be in the course of transit in or through the taxing state at the moment when

the occasion for taxation arises. It also excludes the idea of property which for some definite purpose of its owner has come to rest within the boundaries of the taxing state for a brief and limited time. In either of these cases its location there would be of a temporary or fleeting character.

It does not, however, demand or necessarily involve any idea of permanency or a permanent location in the taxing state. In the Minnesota Case the court, in discussing the Frick Case, said that it had been there held that no state could "impose death duties reckoned upon the value of tangibles located permanently outside her limits." But as a matter of fact the decision in the Frick Case had gone much further than that, and, in its later opinion in First National Bank v. Maine, the court again reviewed the Frick Case and stated its doctrine as being "the power to tax is exclusively in the state where the property has an actual situs."

In the true sense, permanency of location can never be predicated of personal property. The pictures which Mr. Frick housed in the specially built gallery or museum in New York were probably as permanently located where they were as any personal property could ordinarily be, but they might have been removed at any time without difficulty, and there was certainly nothing permanent about the location of the automobiles in his New York garage or the farming implements on his Massachusetts estate. Even less permanent was the location of the money in the safe deposit box in the Blodgett Case. To attempt to identify actual situs with permanent location as applied to personal property is only productive of confusion of thought.

If, then, actual situs is not permanent situs, we must turn to the facts of the Frick and Blodgett Cases to ascertain what it is. From the Frick Case we learn, among other things, that, where the owner has residences in two or more states, furniture, automobiles, farming implements, etc., located at such residences, though not the domiciliary one, have an actual situs at the place where they are. From the Blodgett Case it appears that bank notes and coin in a safe deposit box (there being nothing to show us for what purpose they were there or how long they had remained) also have an actual situs in the state in which they are, though the owner is domiciled elsewhere.

In the case at hand the following facts appear with regard to the portraits which are the subject of the tax: (1) They had been physically located in Pennsylvania two years and ten months. (2) At the time of the owner's death no definite plans had been made for their removal and no definite limit had been placed by the owner upon the duration of their stay in Pennsylvania.

If there were no other facts in the case, it would be beyond dispute that the portraits had an actual situs in Philadelphia. To show that they had something less than that, the complainant points out (1) that the pictures were loaned, without consideration, to the Pennsylvania Museum for the purpose of exhibition, for the pleasure and education of the public; (2) that the loan was not a "permanent loan" after the manner of many loan exhibitions, but that it was understood that the pictures would be returned to the owner on his request, which might be made at any time; and (3) that the owner, after two years and two months, had stated that the arrangement would terminate on a fixed day about a month later, but that the pictures were allowed to remain thereafter until his death in the hope (apparently entertained by both the owner and the museum authorities) that a donor could be found who would buy the paintings and present them to the museum.

As we interpret the meaning of actual situs, it is not destroyed or impaired by these facts. Certainly it must be conceded that the location in Pennsylvania was not permanent, but, as has been stated, it need not be. Perhaps it might be said that it was temporary, although it was only such in the sense that the owner reserved the title and the right to remove the property when he saw fit—a right which he did not exercise for nearly three years and which, so far as the record shows, he had no definitely formed intention of exercising at any predictable time. The portraits were safely housed in Pennsylvania and were under the protection of the laws of that state. They had been taken out of storage to be placed where they were. They were there for an indefinitely prolonged stay, and that, we think, gives them an actual situs.

It may be conceded that the idea of a sale, though by no means to be disregarded, was secondary and remote, and that the portraits were in Pennsylvania primarily for the purpose of being exhibited to the public. If it had appeared that the exhibition was for a specific occasion or for a brief and limited time, I do not say that this fact would not have been of importance as giving a transitory character to their location here. But when the stay is of unlimited duration or, as

suggested, indefinitely prolonged, the mere fact that its main purpose is public exhibition is not enough to destroy the actual situs of the property.

█ We would readily agree that, if these portraits could be endowed with personality, the facts appearing in the record would not be sufficient to show an intention upon their part to change their domicile from New York to Pennsylvania. This is practically the test which the complainant urges upon us. But it is also in substance the view that was urged by the minority and rejected in Gromer v. Standard Dredging Company, supra. The law as set forth in that case and uniformly followed with regard to tangibles is that the inquiry is not whether the property has departed from its or its owner's domicile, but whether the place where it is, regardless of the owner's domicile, is its actual situs.

The bill may be dismissed.

DICKINSON, District Judge (dissenting).

The events attending the trial and ruling in this cause evidence that it is what is called a "close case." The turning point in it is really a fact finding. There is nothing in this which of itself would justify a dissent. The majority opinion gives the view which the court has taken. It has been thought that the opposing view should be presented.

The majority opinion starts with the proposition that tangible property is taxable where it is unless there is in the fact situation something which takes it out of this rule. Then follows the fact finding that the case before us presents no such exempting feature. Confronting this is the other view of the fiction of the law that personal property is wherever its owner is and is in the place of his domicile. It is in consequence only there taxable unless there is that in the fact situation which gives it a situs of its own independent of the domicile of its owner. This fiction is followed in the case of intangibles, but in the case of tangibles may be overthrown by conflicting facts. The question is one of cold-blooded law. Whatever element of sentiment there might be in the case is submerged in the fact that the question is really between two states and whether the tax is payable to Pennsylvania or New York, with the circumstance present that the Pennsylvania tax exaction is the greater. If the situation were reversed and this property was in New York but belonging to the estate of a decedent whose estate was being administered in Pennsylvania, we may assume the taxpayer would not be objecting to a taxation in New York.

The evidentiary facts are not in controversy. They are found in the answer, supplemented by the undenied averments of the bill, and have been so stipulated. The pertinent facts are few.

A collection of portraits belonged to a citizen of New York and were physically there. They had great historical, and, we have no doubt, artistic, value. The owner had at the time no use for them for display purposes or otherwise, and would have put them in storage. The Art Museum of Philadelphia, learning of this, requested a loan of the collection in order that they might be hung in their galleries for public exhibition. The owner had gathered the collection for his own gratification as an art lover or as a collector. The portraits were not held for sale. He acceded to the request made of him. In this he had no selfish motive, but incidentally he did profit by saving storage, insurance and other charges, and by whatever element of value there was in the publicity given to his collection in case he should ever wish to sell it. The collection thus went to Philadelphia. After being on exhibition at the Art Museum for some time, the owner asked for its return. The managers of the Art Museum thought highly of the collection and indulged the hope that they might find a friend and patron who would buy it to present to the museum. They in consequence appealed to the owner, with the request that he permit the portraits to remain with the museum and put a price upon them for sale to any one who would present them to the museum. In so doing the owner was not actuated wholly by a commercial motive, but he took a pride in his collection, which was gratified by the thought of its being kept intact and put on public exhibition. No time limit was mentioned, but the owner was at liberty to have the portraits returned to him whenever he chose. The hopes of the museum managers were not realized, and the owner died with the portraits still on exhibition.

Out of this has arisen the conflicting claims of Pennsylvania and New York to the right to impose an inheritance tax. The distinction of when tangible property is taxable in the jurisdiction in which it is, and when it is assumed to be in the domicile of its owner, is illustrated by the not uncommon practice of an owner of such property having residences in different places. A man may have a town and country residence and summer and winter ones, with tangible per-

sonal property in each. If they are in different states, the question, in case of his death, arises of what property is taxable in each. Along with this there may be a question of the domicile of the owner. The latter question may throw some light on the former, but the two are distinct and different.

The case of Frick v. Pa., 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316, and others give us the rule for our guidance, but it is not always easy to apply it. It is especially difficult to find a phrase by which the rule may be expressed. The majority opinion employs a happy phrase which comes as near to its expression as any which has been coined, but which yet does not fully express it. The phrase applied to the duration of time the property has been where it is and the expectation of its continuance is "indefinitely prolonged." The fact situation must have this element, but yet this is not wholly controlling. There are two expressions in the vernacular which convey the idea. We speak of a place in which a person or thing "belongs" or that a person or thing has its "proper place." Wherever a tangible thing "belongs" or has its "proper place," there it is taxable. The truth seems to be that that rule is based upon an idea which is not difficult to grasp but which cannot be verbally defined.

There are many such ideas. The practical consequence is that the question of where property is taxable turns upon an ultimate fact finding to be made in each case presented. In this case the fact finding made is that these portraits at the time of the owner's death were in Pennsylvania and here under circumstances which would not justify the finding that they were not to stay here because they were here with no end of their stay in sight. In other words, their stay was to be "indefinitely prolonged."

We could join in this finding except for one circumstance. The portraits were sent here only for exhibition purposes. Such a stay is transient. We do not see that the character thus given to their stay here was changed by the hope that some one might buy them for presentation to the museum. The hope remained a hope and was never realized. More than this the law has its policies as well as its principles. There are works of art which it is a liberal education to view. Pilgrimages are made as to a shrine by unnumbered thousands to where they are. Many more thousands are unable to do this. Works of art are, because of this, taken to where the viewers are, that they may see them. This may be to expositions, such as the Centennial or the Century of Progress. They likewise are put on view in permanent art exhibitions, such as the Academy of Fine Arts or the Art Museum in Philadelphia, the Metropolitan in New York, the Corcoran Art Gallery in Washington, and countless other art displays. If the loan of them for such display is meant to be for a limited time, no one would say that they were thus subjected to taxation at the place where on display, merely because of the accidental circumstance that the owner had died while they were still there. The question of liability to tax arises when the display is "indefinitely prolonged." This exhibition of famous works of art serves a useful public purpose, so that the law should not discourage the practice of making such loans. We may be sure that the policy of the law is not to discourage the practice. This means that, in making the fact finding of whether works of art thus on exhibition had so far a permanent habitat as to be taxable, the courts should not be over eager to make that finding. We cannot escape the feeling that it is an ungracious act on the part of any state to tax the owner of art treasures who has sent them into the state to be exhibited for the gratification and education of the people of the state. Merely because their stay there has been prolonged is no justification for taxing them, especially when, as here, the stay has been prolonged because the owner was urged to permit them to remain on exhibition.

As it has been determined that this bill may be maintained, we think that on its merits its prayers should be granted and the injunction prayed for issue.