DAYCO CORPORATION v. I. L. CLAYTON, COMMISSIONER OF REVENUE.

(Filed 1 March, 1967.)

**1. Taxation § 28b—**

　　The State is under no constitutional compulsion to allow a loss incurred by a taxpayer in a prior year to be carried over and deducted from the net taxable income for succeeding years, and the right to deduct such loss carry-over is governed solely by the statute and must be determined in accordance with the statutory provisions permitting such loss carry-over.

**2. Statutes § 5—**

　　A statute must be construed, if possible, to accomplish the purpose of the statute as stated therein.

**3. Taxation § 28b—**

　　Dividends received by a foreign corporation from shares of stock owned by it in non-subsidiary corporations and capital gains received by it from the sale of shares of stock in such non-subsidiary corporations, even though such income is derived from out of state transactions and is not taxable here, must be deducted from the amount of loss carry-over claimed by the corporation against its income taxable by this State in succeeding years, since the income derived from dividends and capital gains is "income not taxable under this article" within the provisions of the statute. G.S. 105-147(9)(d).

APPEAL by plaintiff from *Farthing, J.,* at the November 1966 Session of HAYWOOD.

The plaintiff, a Delaware corporation doing business in North Carolina, filed its corporate income tax returns with the Commissioner of Revenue for its fiscal years ending October 30, 1960, 1961, 1962, 1963 and 1964, respectively, and paid the income tax shown thereon due the State. The defendant assessed an additional income tax against the plaintiff, which the plaintiff paid under protest. It now sues to recover the amount of such payment, less a portion thereof conceded to have been properly assessed. It contends that the portion which it now seeks to recover was unlawfully assessed by reason of the defendant's misconstruction of the provisions of the Revenue Act in determining the deductions allowable to the plaintiff in subsequent years by reason of net economic losses sustained by it in the fiscal years of 1960 and 1961.

The matter was submitted to the superior court, without a jury, upon an agreed statement of facts. The court found the facts to be as so stipulated, these being:

"(1)   The plaintiff is now a Delaware corporation, but was at all times hereinafter mentioned a corporation organized and existing under the laws of the State of Ohio, with its principal office and place of business at 333 West First Street, Dayton, Ohio, authorized to transact business in North Carolina, with a factory in Haywood County, North Carolina. The plaintiff is engaged in the manufacture of rubber and plastic products, and conducts manufacturing operations in several states, including North Carolina.

"(2)   The defendant is the duly appointed, qualified and acting Commissioner of Revenue of the State of North Carolina, with an office in Wake County, North Carolina.

"(3)   The plaintiff reports income taxes to the State of North Carolina on a fiscal year basis which ends on October 31 based upon an allocation of income between the State of Ohio and the State of North Carolina and based upon an apportionment of income taking into account the averaged ratio of property holdings, payrolls and sales in Ohio and elsewhere and North Carolina respectively.

"(4)   The income tax returns filed by the plaintiff reported net losses for the fiscal years of 1960 and 1961 and net gains for the fiscal years 1962, 1963 and 1964; in the returns filed by the plaintiff, the losses reported for 1960 and 1961 were carried forward as net economic loss deductions in total extinguishment of the 1962 and 1963 reported gains and in partial extinguish-

ment of the gain reported for 1964; that no taxes were paid in the years 1960 and 1961 by reason of the losses reported and none paid in 1962 nor 1963 by reason of the net economic losses carried forward per the plaintiff's return; that in 1964 the plaintiff reported that all but $1,240,801.83 of its total net income was wiped out by the net economic loss deduction remaining, of which sum 26.3711% was apportioned by the plaintiff to North Carolina, resulting in a tax calculated by the plaintiff to be $10,847.45, which was paid.

"(5)   On April 13, 1965, the defendant assessed the plaintiff with an income tax deficiency in the amount of $64,522.73 plus interest of $1,007.73, a total of $65,530.46, representing taxes and interest alleged by the defendant to be due by the plaintiff.

"(6)   On May 10, 1965, the plaintiff mailed a letter to the defendant objecting to the assessment and requested a hearing thereon; on November 18, 1965, an informal hearing was granted and held; on January 25, 1966, the plaintiff was notified of the defendant's decision upholding the assessment; on February 11, 1966, the plaintiff, pursuant to the assessment but under protest, paid the tax and interest in the total amount of $68,722.57 ($64,522.73 tax plus $4,199.84 interest); on March 10, 1966, the plaintiff, conceding its liability for part of the tax assessed, made demand or claim for refund in the amount of $55,484.27 plus interest; on March 15, 1966, the defendant denied the claim for refund; this action for the recovery of $55,484.27 plus interest was commenced in the Superior Court of Haywood County on June 2, 1966. Process was served on the defendant on June 7, 1966, and answer filed June 17, 1966.

"(7)   The assessment herein described as computed by the defendant is twofold, namely, that income from certain royalties and income from the sale of certain tangible personal assets is apportionable to North Carolina, and second, that the available net economic loss carry-over deduction must be reduced by all taxable or non-taxable income, including the apportioned part of the income from dividends and income from the sale of stock.

"(8)   The plaintiff conceded the first part of the assessment, *i. e.*, that royalties received by the plaintiff from patents or processes developed by the plaintiff in North Carolina are unitary and apportionable to North Carolina G.S. 105-134(3), and that income from the sale of certain tangible properties was allocable to North Carolina."

The superior court concluded as matters of law:

"1.  Dividends received by a corporation whose principal place of business is located in a state other than North Carolina from non-subsidiary corporations constitute non-unitary income which is directly allocable to such other state under G.S. 105-134, but the apportionable part of such dividends are available to the Commissioner of Revenue in reducing net economic loss and net economic loss carry-over under G.S. 105-147(9)(d).

"2.  Gains by a corporation whose principal place of business is located in a state other than North Carolina from the sale of a non-subsidiary corporation's stocks which constitute non-unitary income and is directly allocable to such other state under G.S. 105-134, but the apportionable part of such gains are available to the Commissioner of Revenue in reducing net economic loss and net economic loss carry-over under G.S. 105-147(9)(d).

"3.  The assessment of additional taxes by the Commissioner of Revenue, part of which were conceded by the taxpayer and part of which, dealt with in Conclusions of Law Nos. 1 and 2, was paid under protest and is the basis for this action, was in all respects in accordance with law, G.S. 105-147(9)(d): *Dayton Rubber Co. v. Commissioner of Revenue,* 244 N.C. 170 (1956); *Aberfoyle Mfg. Co. v. Commissioner of Revenue,* 265 N.C. 165 (1965)."

Upon these conclusions the court adjudged that the plaintiff take nothing by this action and that the costs of the action be taxed against the plaintiff.

In their agreed statement, so filed with the superior court, the parties drew the issue between them as follows:

"It is agreed that, if dividends received from and gains from the sale of non-subsidiary corporate stocks owned by the plaintiff are non-taxable income, the portion of the assessment relating thereto is correct. It is agreed that, if dividends received from and gains from the sale of non-subsidiary corporate stocks owned by the plaintiff constituted income which is not apportionable to North Carolina in reduction of a net economic loss under G.S. 105-147(9)(d)., although such income is directly allocable to the state in which the principal place of business of a corporation is located, G.S. 105-134(2)a., the portion of the assessment relating thereto is incorrect."

The plaintiff contends that dividend income received by it from non-subsidiary corporate stocks and capital gains made by it from

the sale of such stocks constitute taxable income allocable to states
other than North Carolina and, consequently, may not be con-
sidered "non-taxable income" to be deducted from its "net eco-
nomic loss" in computing the deduction allowable in a subsequent
year on account of such loss. The defendant contends that, in com-
puting the deduction for such loss sustained in a prior year, the loss
must be reduced by all such income, received in the year for which
such deduction is claimed, even though allocable to another state in
computing the corporation's tax liability apart from the question
of "net economic loss" deductions. The defendant also contends that
a "net economic loss" means the amount by which allowable de-
ductions for the year of the loss exceeds the income for such year
from all sources, including income not taxable under the North
Carolina Revenue Act.

The defendant does not deny that all procedural requirements
for the recovery by the plaintiff of any refund to which it may be
entitled upon the merits of its contentions have been fulfilled. Thus,
the only question for the superior court and upon appeal is whether
the Commissioner of Revenue followed the method prescribed by
law for the determination of the deduction allowable to the plaintiff
on account of a "net economic loss" in a prior year.

*Attorney General Bruton and Deputy Attorney General Abbott,
for defendant appellee, Commissioner of Revenue.*
*Millar & Alley for plaintiff appellant.*
*Of Counsel: Kennedy Legler, Jr.*

Lake, J. The plaintiff does not contend that the assessment in
question has the effect of the levy of a tax on income which is be-
yond the constitutional power of the State to tax. The sole question
is the right of the plaintiff to deduct from that portion of its income,
otherwise subject to tax by the State, a certain amount by reason of
a "net economic loss" sustained by the plaintiff in an earlier year.
The General Assembly was under no constitutional compulsion to
allow any deduction whatever from income, otherwise taxable in
this State, because of such loss in a prior year. *Manufacturing Co.
v. Clayton, Acting Comr. of Revenue,* 265 N.C. 165, 143 S.E. 2d 113;
*Rubber Co. v. Shaw, Comr. of Revenue,* 244 N.C. 170, 92 S.E. 2d
799. We are, therefore, concerned solely with the interpretation to
be given G.S. 105-147(9)(d), this being the only provision in the
Revenue Act authorizing a deduction from income otherwise tax-
able on account of a "net economic loss" in a prior year.

This portion of the Revenue Act provides that in computing
"net income" a deduction shall be allowed for "losses in the nature

of net economic losses sustained in any or all of the five preceding income years arising from business transactions" (or other types of transactions not germane to the present inquiry). Subparagraph (d, 2) defines "net economic loss" as follows:

> "The net economic loss for any year shall mean the amount by which allowable deductions for the year other than personal exemptions, nonbusiness deductions and prior year losses shall exceed income from all sources in the year including any income not taxable *under this article*." (Emphasis added.)

Subparagraphs (d, 3 and 4) prescribe the extent to which a deduction for such "net economic loss" in a prior year may be allowed in computing the tax due upon the income received in the subsequent year. These provisions are:

> "3. Any net economic loss of a prior year or years brought forward and claimed as a deduction in any income year may be deducted from taxable income of the year only to the extent that such carry-over loss from the prior year or years shall exceed any income not taxable *under this article* received in the same year in which the deduction is claimed, except that in the case of taxpayers required to apportion to North Carolina their net apportionable income, as defined in this article, only such proportionate part of the net economic loss of a prior year shall be deductible from the income taxable *in this State* as would be determined by the use of the apportionment ratio computed under the provisions of G.S. 105-134 or of subsection (c) of G.S. 105-142, as the case may be, for the year of such loss. (Emphasis added.)
>
> "4. A net economic loss carried forward from any year shall first be applied to, or offset by, any income *taxable or nontaxable* of the next succeeding year before any portion of such loss may be carried forward to a succeeding year. If there is any income *taxable or nontaxable* in a succeeding year not otherwise offset only the balance of any carry-over loss may be carried forward to a subsequent year." (Emphasis added.)

Statutory provisions must be construed, if possible, so as to accomplish the purpose of the statute stated therein. *Blair v. Commissioners,* 187 N.C. 488, 122 S.E. 298; *Manly v. Abernathy,* 167 N.C. 220, 83 S.E. 343. In subparagraph (d, 1) the legislature has stated its purpose in permitting a deduction for a "net economic loss" sustained in a prior year as follows:

> "The purpose in allowing the deduction of net economic loss of a prior year or years is that of granting some measure of re-

lief to taxpayers who have incurred economic misfortune or who are otherwise materially affected by strict adherence to the annual accounting rule in determination of taxable income, and the deduction herein specified does not authorize the carrying forward of any particular items or category of loss except to *the extent that such loss or losses shall result in the impairment of the net economic situation of the taxpayer* such as to result in a net economic loss as hereinafter defined." (Emphasis added.)

In the light of this stated purpose of the legislature, we construe the process provided by G.S. 105-147(9)(d) for determining the amount of the deduction allowable to a corporation on account of a "net economic loss" in a prior year to be:

*First:* The income of the corporation from all sources whatsoever for the year in which such loss is alleged to have occurred is computed. In this computation there must be included income exempt from taxation, income allocated to other states and, therefore, not taxable in North Carolina and income allocated to North Carolina. (G.S. 105-147(9), subparagraph d, 2.)

*Second:* The total "allowable deductions" for the year in which the loss is alleged to have occurred are computed. In this computation, the calculator looks to the Revenue Act of this State to determine what is an "allowable deduction." He excludes from the computation (1) personal exemptions, (2) non-business deductions, and (3) losses in earlier years (G.S. 105-147(9), subparagraph d, 2.)

*Third:* If the amount so computed in paragraph "Second" exceeds the amount so computed in paragraph "First," the excess is the amount of the taxpayer's total "net economic loss." (G.S. 105-147(9), subparagraph d, 2.)

*Fourth:* The total "net economic loss" is multiplied by the "apportionment ratio" computed for the corporation, pursuant to G.S. 105-134 (or G.S. 105-142(c), if applicable), for the year in which the "net economic loss" was sustained. The product, so obtained, is the amount to be "carried forward" for use in computing the corporation's income tax liabilities to North Carolina in the subsequent year or years. (G.S. 105-147(9), subparagraph d, 3.)

*Fifth:* Compute the total income "not taxable" under the North Carolina Revenue Act which the corporation receives in the next succeeding year after the year in which the "net economic loss" was sustained. (G.S. 105-147(9), subparagraphs d, 3 and 4.)

*Sixth:* Subtract from the amount "carried forward" (Step Fourth, above) the amount computed in Step Fifth, above. The remainder is the amount available for deduction in North Carolina in

the year next succeeding that in which the "net economic loss" was sustained on account of that loss.

*Seventh:* Subtract from what would otherwise be the corporation's "net taxable income" in North Carolina for the year next succeeding that in which the "net economic loss" was sustained the deduction computed in Step Sixth, above. The remainder, if any, is subject to tax in North Carolina at the rate of six per cent. (G.S. 105-134.)

*Eighth:* Any excess of the deduction computed in Step Sixth, above, over what would have been the corporation's "net taxable income" in North Carolina for the year next succeeding that in which the "net economic loss" was sustained had there been no such loss, then is "carried forward" for use in computing the corporation's income tax liabilities to North Carolina in the next year. (G.S. 105-147(9), subparagraph d, 4.)

*Ninth:* In such next year *(i. e.,* the second year following that in which the "net economic loss" was sustained), start with the amount "carried forward" to such year, as computed in Step Eighth, above. Repeat for such year Steps Fifth, Sixth, Seventh and Eighth, above. This process continues through the fifth year following that in which the "net economic loss" occurred, or until the amount "carried forward" from the year in which such loss occurred (Step Fourth) is exhausted. (G.S. 105-147(9), subparagraphs d, 4 and 5.)

Dividends received by a corporate taxpayer from shares of stock owned by it in non-subsidiary corporations are clearly "income" in the year received within the meaning of G.S. 105-147(9)(d). Likewise, a gain received by a corporate taxpayer from its sale of such shares of stock is "income" in the year received.

Under G.S. 105-134(2)(a) all such income so received by the plaintiff was allocable to states other than North Carolina. Thus, it is income upon which no tax is imposed by the Revenue Act. The Commissioner of Revenue contends that this is, therefore, income "not taxable under this article," within the meaning of G.S. 105-147(9), subparagraphs (d, 2 and 3) and "income nontaxable" under subparagraph (d, 4). If this be correct, such income must be included in the computations to be made under Steps Fifth and Ninth, above. The plaintiff contends that such income is not "income not taxable under this article," but is taxable income allocated to states other than North Carolina and, therefore, it is not to be included in the computations to be made under Steps Fifth and Ninth, above.

We hold that the construction placed by the Commissioner upon the terms "income not taxable under this article" and "income non-

taxable" as used in these provisions of the statute is correct. It is a strained and unnatural use of the term "taxable income" to extend it to income which the statute attributes, by the allocation process, to a state or country other than North Carolina. The construction placed upon these terms by the Commissioner is supported by the language of G.S. 105-134, which provides, "Every corporation engaged in doing business in this State shall pay annually an income tax equivalent to six per cent of its net *taxable* income." (Emphasis added.) Here, the term "taxable income" clearly means income on which the State of North Carolina, by the Revenue Act, levies a tax. All other income is "income not taxable under this article" and, therefore, is to be included in the computations to be made in Steps Fifth and Ninth, above.

If such dividends or gains are received by the corporation in the year in which it alleges it sustained a "net economic loss," it is clear that the statute contemplates that such dividends and gains must be included in the "income from all sources" to be computed under Step First, above. It is necessary that they be so included in order to achieve the declared purpose of the statute in allowing a deduction for "net economic loss." (G.S. 105-147(9), subparagraph (d, 1).)

G.S. 105-147(9), subparagraph (d, 4) provides that a "net economic loss" carried forward from any year shall first be applied to or offset by "any income taxable or nontaxable" of the next succeeding year before any portion of it may be carried forward to a second, third, fourth or fifth year. Clearly, dividends and gains from the sale of corporate stock received in the year "next succeeding" that in which the "net economic loss" was sustained are either "taxable" income or "nontaxable" income. In either event, all such income in the year next succeeding that in which the "net economic loss" was sustained is to be deducted from the part of such loss "carried forward" for use in the computation of the deduction permissible in the second, third, fourth or fifth year after that in which the "net economic loss" was sustained. Surely the legislature intended that such income received in the year next succeeding the year in which the "net economic loss" was sustained is to be subtracted from the original "carry forward" loss in computing the deduction allowable in the first year following such loss. (Steps Fifth and Sixth, above.) That is, such income is "income not taxable under this article."

The judgment of the superior court denying recovery by the plaintiff was, therefore, in accordance with the provisions of the statute.

Affirmed.