MARY SUE RIGBY, EXECUTRIX UNDER THE WILL OF DAN WILLIAMS RIGBY, AND MARY SUE RIGBY, INDIVIDUALLY, PLAINTIFFS, v. I. L. CLAYTON, COMMISSIONER OF REVENUE OF NORTH CAROLINA, DEFENDANT

No. 68SC111

(Filed 14 August 1968)

1. Taxation § 17—    nature of inheritance tax

   The North Carolina inheritance tax is not a tax upon property itself, but is a tax imposed on the privilege to succeed to property upon the death of the former owner.

**2. Taxation § 2— inheritance tax — power of legislature to classify**

The broad power of a state legislature to classify and thus to discriminate for purposes of inheritance taxation has been fully established.

**3. Taxation §§ 2, 17— inheritance tax — power of legislature — distinction between two classes of decedents**

The State Legislature is not so limited in its power to make classifications for purposes of its inheritance tax laws that it could not make a distinction between decedents leaving property solely within the State and decedents leaving property both within and without the State, even though such classification results in differing amounts of tax. G.S. 105-21 as amended by Sec. 19, Chap. 127, Session Laws of 1937.

**4. Taxation § 17— constitutionality of inheritance tax — inclusion of decedent's property outside the State for purpose of computation**

G.S. 105-21, which imposes an inheritance tax upon the transfer of property within the State but at a rate determined by reference to the decedent's entire estate wherever located, *is held* constitutional.

APPEAL by plaintiffs from *Ervin, J.,* October 1967 Session of IREDELL Superior Court.

Dan Williams Rigby, a resident of Iredell County, North Carolina, died on 17 March 1964 leaving a will under which his wife, the plaintiff, was sole beneficiary and executrix. At the time of his death he owned property within the State of North Carolina having an appraised value of $110,021.49 and real property located in South Carolina having an appraised value of $61,000.00. Deductions amounted to $31,957.02. Plaintiff executrix filed with the defendant, who is Commissioner of Revenue of North Carolina, an inheritance tax return for the estate of her decedent in which she listed all property of the decedent located in North Carolina, claimed the full amount of the deductions and the specific exemptions allowed by G.S. 105-4, but omitted any property located outside of North Carolina, and paid an inheritance tax to the State of North Carolina computed without reference to the South Carolina property. Defendant, by computing the inheritance tax due the State of North Carolina in accordance with the provisions of G.S. 105-21, which requires all of decedent's property, wherever located, to be used in establishing the rate at which the decedent's property in North Carolina is taxed, assessed an additional inheritance tax on the transfer of the North Carolina property. Plaintiffs paid the additional tax under protest and thereafter filed timely claim for refund, which was denied by defendant. Plaintiffs, contending that G.S. 105-21 is unconstitutional, bring this action to recover the additional tax assessed. The case was heard upon an agreed statement of facts. From

judgment holding that G.S. 105-21 does not violate the State or the Federal Constitution and adjudging that plaintiffs take nothing by this action, plaintiffs appeal.

*Adams and Dearman, by C. H. Dearman and Raymer, Lewis, and Eisele, by Douglas G. Eisele, for plaintiff appellants.*

*T. W. Bruton, Attorney General, and Myron C. Banks, Assistant Attorney General, for defendant appellee.*

PARKER, J.

The sole question presented by this appeal is the constitutionality of G.S. 105-21, which reads as follows:

"A tax shall be assessed on the transfer of property, including property specifically devised or bequeathed, made subject to tax as aforesaid in this State of a resident or nonresident decedent, if all or any part of the estate of such decedent, wherever situated, shall pass to persons or corporations taxable under this article, which tax shall bear the same ratio to the entire tax which the said estate would have been subject to under this article if such decedent had been a resident of this State, and all his property, real and personal, had been located within this State, as such taxable property within this State bears to the entire estate, wherever situated. It shall be the duty of the personal representative to furnish to the Commissioner of Revenue such information as may be necessary or required to enable the Commissioner to ascertain a proper computation of his tax. Where the personal representative fails or refuses to furnish information from which this assessment can be made, the property in this State liable to tax under this article shall be taxed at the highest rate applicable to those who are strangers in blood."

Appellants attack this statute as being unconstitutional on the grounds that, because it requires inclusion of property outside the State in the base upon which the North Carolina inheritance tax is computed, the necessary effect is to tax the outside property over which the State has no taxing jurisdiction. In support of their contentions appellants cite: *Frick v. Pennsylvania,* 268 U.S. 473, 45 S. Ct. 603, 69 L. ed. 1058; *Treichler v. Wisconsin.* 338 U.S. 251, 70 S. Ct. 1, 94 L. ed. 37; and refer to the dissenting opinion of Justice Holmes in *Maxwell v. Bugbee,* 250 U.S. 525, 40 S. Ct. 2, 63 L. ed. 1124. In considering appellants' contention, a look at the history of

the statute and examination of the nature of the State's inheritance tax will be helpful.

G.S. 105-21 is derived from a statute which first appeared in the North Carolina Revenue Act in 1921 (Sec. 12, Chap. 34, P.L. 1921). As originally enacted the statute applied only to estates of nonresident decedents who owned property within the state, and in those instances did not apply to specific bequests or devises. In 1925 the Legislature removed the proviso exempting application to property specifically devised and bequeathed (see Sec. 13, Chap. 101, P.L. 1925), and in 1937 broadened the statute to make it applicable to estates of all decedents, both resident and nonresident, who die owning property both within and without the state (see Sec. 19, Chap. 127, Session Laws 1937). Since 1937 the statute has remained in its present form.

The 1921 Act was identical in language with and obviously was copied from a New Jersey statute which had been approved by the United States Supreme Court in a decision handed down in October, 1919, in the case of *Maxwell v. Bugbee, supra.* In that case the constitutionality of the statute was attacked on the same grounds appellants here assert to attack G.S. 105-21. A majority of the United States Supreme Court, however, found the statute constitutional. Justice Day, speaking for the majority, said (page 539):

> "It is not to be disputed that, consistently with the Federal Constitution, a State may not tax property beyond its territorial jurisdiction, but the subject-matter here regulated is a privilege to succeed to property which is within the jurisdiction of the State. When the State levies taxes within its authority, property not in itself taxable by the State, may be used as a measure of the tax imposed. . . . In the present case the State imposes a privilege tax, clearly within its authority, and it has adopted as a measure of that tax the proportion which the specified local property bears to the entire estate of the decedent. That it may do so within limitations which do not really make the tax one upon property beyond its jurisdiction, the decisions to which we have referred clearly establish. The transfer of certain property within the State is taxed by a rule which considers the entire estate in arriving at the amount of the tax. It is in no just sense a tax upon the foreign property, real or personal. It is only in instances where the State exceeds its authority in imposing a tax upon a subject-matter within its jurisdiction in such a way as to really amount to taxing that which'

is beyond its authority that such exercise of power by the State is held void."

[1]    The North Carolina inheritance tax is not a tax upon property itself, but is a tax imposed on the privilege to succeed to property upon the death of the former owner. In the case of *In re Morris Estate,* 138 N.C. 259, 50 S.E. 682, the North Carolina Supreme Court, in declaring the State's inheritance tax statute to be constitutional against the objection that it was discriminatory and not uniform in application, said (page 262):

> "The fallacy in the argument of counsel for the executors is in assuming that the tax is a tax upon property, and therefore should be uniform and levied in conformity with the requirements of the Constitution. If we conceded his premise, we should have no difficulty in arriving at his conclusion. The theory on which taxation of this kind on the devolution of estates is based and its legality upheld is clearly established and is founded upon two principles: (1) A succession tax is a tax on the right of succession to property, and not on the property itself. (2) The right to take property by devise or descent is not one of the natural rights of man, but is the creature of the law. Should the supreme law abolish such rights, the property would escheat to the Government or fall to the first occupant. The authority which confers such rights may impose conditions upon them, or take them away entirely. Accordingly, it is held that the States may tax the privilege, grant exemptions, discriminate between relatives and between these and strangers, and are not precluded from the exercise of this power by constitutional provisions requiring uniformity and equality of taxation."

From the foregoing it is apparent that the constitutionality of G.S. 105-21 has already been established unless, as appellants contend, either: (1) The legislative amendments of 1925 or 1937 served to render unconstitutional a statute which was expressly held to be constitutional in *Maxwell v. Bugbee, supra;* or (2) the authority of that case has been so weakened by subsequent decisions as to make it no longer controlling. We have carefully examined both of these contentions and do not agree with either. In our view *Maxwell v. Bugbee, supra,* is still controlling and is determinative of the constitutionality of G.S. 105-21 in its present form.

[2, 3]    As to the effect of the subsequent legislative amendments, appellants have made no point as to the 1925 amendment nor are we able to see any manner in which it could have a bearing on the question now before us. Appellants do contend that the 1937 amendment,

which made the statute applicable to estates of resident as well as to estates of nonresident decedents, had the effect of eliminating the basis for classification which the United States Supreme Court found to be reasonable in *Maxwell v. Bugbee, supra*. But we do not agree that the State Legislature is so limited in its power to make classifications for purposes of its inheritance tax laws that it could not adopt the new classifications effected by the 1937 amendment. The distinction made by the classification before the court in *Maxwell v. Bugbee* and as made in the North Carolina Revenue Act prior to 1937 was between resident and nonresident decedents. The distinction made by the classification in G.S. 105-21 as it has existed since 1937 is between decedents leaving property solely within this State and decedents leaving property both within and without this State. If there is any real difference between the New Jersey statute which was upheld in *Maxwell v. Bugbee* and in G.S. 105-21, it is that the latter statute provides more reasonable, less arbitrary, classifications. Even though such classifications result in differing amounts of tax, they are no more discriminatory than classifications based upon relationship to the decedent, which were held constitutional and proper in the case of *In re Morris Estate, supra*. The broad power of a state legislature to classify and thus to discriminate for purposes of inheritance taxation has been fully established. *In re Morris Estate, supra;* 28 Am. Jur., Inheritance, Estate, and Gift Taxes, § 30.

In our opinion the authority of *Maxwell v. Bugbee,* has been in no way weakened by the subsequent decisions of the United States Supreme Court cited by appellants. In *Frick v. Pennsylvania, supra,* the State of Pennsylvania sought to include in the gross estate of a Pennsylvania decedent the value of tangible personal property located outside the state. To this total, Pennsylvania applied its inheritance tax. The court held Pennsylvania had no constitutional power to do this. However, *Frick* in no way overrules *Maxwell,* but expressly distinguishes one from the other, saying of the *Maxwell* situation (page 495):

> "The only bearing which the property without the state had on the tax imposed in respect of the property within was that it affected the *rate* of the tax. Thus, if the entire estate had a value which put it within the class for which the rate was 3 per cent, that rate was to be applied to the value of the property within the state in computing the tax on its transfer, although its value, separately taken, would put it within the class for which the rate was 2 per cent. There was no attempt, as here, to compute the tax in respect of the part within the state on the value of the whole." (Emphasis added.)

Therefore, rather than overruling *Maxwell,* the *Frick* case sustains its validity by recognizing the difference between an attempt to tax succession to property within the State in an amount computed on the value of the entire estate wherever located (which *Frick* held a state had no constitutional power to do), and a statute which merely uses the value of the entire estate wherever located to determine the *rate* of tax to be applied to transfer of property within the state (which *Maxwell* held a state does have constitutional power to do). Nor was the *Maxwell* holding changed by the decision in *Treichler v. Wisconsin, supra.* In that case Wisconsin had attempted to levy an additional inheritance tax based solely upon the amount of the credit for state inheritance taxes allowed by the Federal Estate Tax law and the amount of such taxes paid in other states, without reflecting any influence exerted by the ratio of Wisconsin property to the total estates. The court held that Wisconsin could not do this, saying (page 256):

> "Wisconsin's statute may be more sophisticated than Pennsylvania's, but in terms of ultimate consequences this case and the *Frick* Case are one. It is quite unnecessary to know in either case what property is located within the taxing jurisdiction in order to compute the challenged exaction."

It should be noted that after the *Treichler* case was remanded to the Wisconsin Supreme Court, the Wisconsin authorities apportioned the challenged tax on the ratio which the Wisconsin property bore to the whole estate. *In re Miller's Estate,* 257 Wis. 439, 43 N.W. 2d 428. On a second appeal to the United States Supreme Court, that Court upheld the tax as so apportioned, *Treichler v. Wisconsin,* 340 U.S. 868, 71 S. Ct. 120, 95 L. ed. 633, once again approving the doctrine of *Maxwell v. Bugbee.*

The principle of *Maxwell v. Bugbee* was further approved in *Great Atlantic & Pacific Tea Co. v. Grosjean,* 301 U.S. 412, 57 S. Ct. 772, 81 L. ed. 1193, in which the Court held that a state may lawfully provide that the *rate* of a tax imposed upon activities within its borders may be affected by the taxpayer's extraterritorial activities. In that case the Court approved the constitutionality of a Louisiana statute under which the rate of a tax imposed upon each unit of a chain store operated within its borders was fixed by reference to the number of units in the entire chain wherever located. Holding this legislation valid as against the attack that it was an attempt to tax property and activities beyond the taxing state's jurisdiction, the Court said (page 424):

> "The state may not tax real property or tangible personal prop-

erty lying outside her borders; nor may she lay an excise or privilege tax upon the exercise or enjoyment of a right or privilege in another state derived from the laws of that state and therein exercised and enjoyed. But, as we have seen, the subject of the tax in question is the prosecution of a defined business activity within the State of Louisiana, — the conduct of a retail store which is a part of a chain under a single management, ownership or control, — a legitimate subject of a license or occupation tax. The measure of the exaction is the number of units of the chain within the state, — a measure sanctioned by our decisions. The rate of tax for each such unit is fixed by reference to the size of the entire chain. In legal contemplation the state does not lay a tax upon property lying beyond her borders nor does she tax any privilege exercised and enjoyed by the taxpayer in other states."

[4] North Carolina is not alone in imposing an inheritance tax upon succession to property within its borders but at a rate determined by reference to the decedent's entire estate wherever located. Reference to Prentice-Hall, State Inheritance Taxes, Vol. 1, Paragraphs 695, 696, reveals that at least ten other states use a similar taxing method. The Court of Appeals of New York upheld a similar statute of that State against the same attack as is here being made against the North Carolina statute. *In re Lagergren's Estate,* 276 N.Y. 184, 11 N.E. 2d 722.

In the light of the above cases we find no warrant for appellants' assertion that the point of constitutional law announced in *Maxwell v. Bugbee* has been repudiated. We think the principle announced in that case is still valid and is as equally applicable to sustain the validity of G.S. 105-21 as it was when applied to the statute as originally enacted. The judgment appealed from is

Affirmed.

MALLARD, C.J., and BROCK, J., concur.