AARON ARONOV v. SECRETARY OF REVENUE, DEPARTMENT OF REVENUE, STATE OF NORTH CAROLINA

No. 336PA87

(Filed 7 September 1988)

**1. Taxation § 28.3— nonresident taxpayer—reduction of carryover losses by non-North Carolina income—due process**

The Secretary of Revenue's interpretation of N.C.G.S. § 105-147(9)(d)(2) to require a nonresident taxpayer to reduce his North Carolina carryover losses

by his non-North Carolina income does not have the effect of imposing a tax on the non-North Carolina income in violation of the due process clause of the U. S. Constitution or the law of the land clause of the N. C. Constitution.

**2. Taxation § 28.3— nonresident taxpayer—reduction of carryover losses by non-North Carolina income—legislative authority**

The Secretary of Revenue's interpretation of N.C.G.S. § 105-147(9)(d)(2) to require a nonresident individual taxpayer to reduce his North Carolina carryover losses by his non-North Carolina income did not exceed legislative authority or contravene the general purpose clause of N.C.G.S. § 135-134, since the statute applies with equal force to a nonresident individual as it does to a foreign corporation or interstate business.

Justice MARTIN dissenting.

APPEAL by the Secretary of Revenue from a unanimous decision of the Court of Appeals, 85 N.C. App. 677, 355 S.E. 2d 854 (1987), affirming the Order reversing Final Administrative Decision No. 212 of the Tax Review Board, entered by *Bailey, J.,* at the 27 May 1986 Civil Non-Jury Session of Superior Court, WAKE County. Heard in the Supreme Court 15 October 1987.

*Law offices of Kenneth G. Anderson, by Kenneth G. Anderson and James P. Stevens, and Hunter, Wharton & Howell, by John V. Hunter, III, for plaintiff-appellee.*

*Lacy H. Thornburg, Attorney General, by Newton G. Pritchett, Jr., Assistant Attorney General, for appellants Secretary of Revenue, Department of Revenue, and State of North Carolina.*

MEYER, Justice.

This case presents an issue of first impression. We decide whether the Secretary of Revenue's requirement that a nonresident taxpayer reduce his distributive share of his North Carolina partnership's net operating loss each year by his non-North Carolina income has the effect of imposing a tax on that income in violation of constitutional and legislative authority. The Court of Appeals resolved the issue in favor of the taxpayer. We reverse.

During the years 1975 through 1978, Aaron Aronov (hereinafter "the taxpayer") was a nonresident of North Carolina, domiciled and residing in Montgomery, Alabama, but doing business in North Carolina as a limited partner in Freedom Drive Mall, Ltd., a limited partnership which operated a shopping center in Char-

lotte, North Carolina. For each of the taxable years 1975, 1976 and 1977, the partnership realized net operating losses of $195,438.62, $309,789.78 and $450,279.10 respectively. The taxpayer's distributive share of the partnership losses was $52,768.43 in 1975, $83,643.24 in 1976 and $121,575.36 in 1977. The taxpayer derived substantial income from sources outside North Carolina for those years, however, in the amounts of $118,056, $283,758 and $488,908 respectively.

The shopping center venture was unsuccessful and the lender, First Chicago Realty Corporation, sought to acquire the property under a deed in lieu of foreclosure. On 1 March 1978, the partnership sold its interest in the shopping center to Freedom Mall Associates, Inc., an agent of the lender, for the consideration of $100.00 and cancellation of the partnership's indebtedness, which had been secured by a deed of trust on the property to the lender.

During the taxable year 1978, the partnership realized a total income of $984,098.20, which included the gain from the cancellation of the debt upon sale of the shopping center. After deducting interest and other expenses, the partnership realized a net income of $955,507.50, as reflected in its 1978 tax return. The taxpayer's distributive share of the net taxable income for that year was $257,987.03.

The taxpayer reported $257,987 as his distributive share on his 1978 North Carolina individual income tax return. As a deduction from this income, he claimed a carryover loss of $257,987, representing his accumulated distributive shares of the partnership's net operating losses for the years 1975, 1976 and 1977. As a result, the taxpayer's 1978 return reflected adjusted gross income of $0.00 and no tax due.

The Department of Revenue disallowed the taxpayer's claimed deduction on the grounds that under N.C.G.S. § 105-147(9)(d)(2) the taxpayer had not shown that he had sustained net economic losses in 1975, 1976 and 1977, because his income from all sources in those years, including any income not taxable under North Carolina's individual income tax laws, exceeded his distributive share of the partnership's net operating losses in 1975, 1976 and 1977. By Notice of Income Tax Adjustment, the Department proposed an assessment for 1978 of $17,839.09 plus interest, based

on the taxpayer's North Carolina net taxable income. The taxpayer requested a hearing before the Department of Revenue. At the hearing, he contended that the income he had reported from the sale of the shopping center was only a "technical" gain, and that requiring him to reduce his distributive share of the partnership's loss each year by his non-North Carolina income had the effect of imposing a tax on that income in violation of both legislative and constitutional authority. On 4 August 1981, the Secretary of Revenue (hereinafter "Secretary") entered a Final Decision which sustained the assessment for 1978 in its entirety.

The taxpayer appealed the Final Decision to the Tax Review Board, which initially remanded the matter to the Secretary based on a decision of the United States Court of Appeals for the Fifth Circuit not pertinent to the question presented here because of an intervening reversal by the United States Supreme Court. *Commissioner of Revenue v. Tufts*, 461 U.S. 300, 75 L.Ed. 2d 86, *reh'g denied*, 463 U.S. 1215, 77 L.Ed. 2d 1401 (1983). On rehearing before the Assistant Secretary of Revenue, the taxpayer renewed his contentions as above. On 21 June 1984, the Assistant Secretary entered a Final Decision sustaining the assessment in its entirety. The matter was subsequently reviewed by the Tax Review Board. On 31 January 1985, the Board entered Administrative Decision No. 212, which affirmed the Assistant Secretary of Revenue's Final Decision in all respects.

The taxpayer then petitioned for review in Superior Court. The trial court, sitting without a jury, reversed Administrative Decision No. 212 and its underlying assessment, concluding that (1) it violated the due process and commerce clauses of the United States Constitution as well as the law of the land clause of the North Carolina Constitution, (2) it exceeded statutory authority and was legally erroneous, and (3) it was arbitrary and capricious.

The Secretary appealed. The Court of Appeals affirmed the judgment of the trial court on the grounds that (1) the Secretary's construction of N.C.G.S. § 105-147(9)(d)(2) to allow use of the non-resident taxpayer's non-North Carolina income to reduce his carryover losses in North Carolina was an indirect attempt to tax income not taxable by this state in violation of both federal due process and North Carolina's law of the land clause; and (2) the Secretary's interpretation of N.C.G.S. § 105-147(9)(d)(2) exceeded

statutory authority as espoused in the general purpose clause of N.C.G.S. § 105-134. The Court of Appeals declined to reach the question of whether the Secretary's interpretation violated the federal commerce clause. The Secretary appealed to this Court on the basis of substantial questions arising under the Constitutions of the United States and of North Carolina.

I.

[1]   We first address the question of whether the Secretary's interpretation of N.C.G.S. § 105-147(9)(d)(2) violates the federal due process clause or the law of the land clause of the state constitution. The Court of Appeals determined that the Secretary's interpretation of the statute resulted in "a sophisticated scheme which taxes, belatedly, the nonresident taxpayer's non-North Carolina income." *Aronov v. Sec. of Rev.*, 85 N.C. App. 677, 682, 355 S.E. 2d 854, 857.

N.C.G.S. § 105-147(9)(d)(2) provides as follows:

The net economic loss for any year shall mean the amount by which allowable deductions for the year other than personal exemptions, non-business deductions and prior year losses shall exceed *income from all sources in the year including any income not taxable under this Division.*

N.C.G.S. § 105-147(9)(d)(2) (1985) (emphasis added). The Secretary has interpreted the emphasized language to require that

[i]f a nonresident with income taxable to North Carolina and also with income not taxable to North Carolina has a loss on the North Carolina income, he must reduce the loss by the income not taxable to North Carolina under this division before he may carry the loss over to the ensuing year.

N.C. Admin. Code tit. 17, r. 6B.2604 (February 1976).

Because the term "law of the land" in article I, section 20 of the North Carolina Constitution is synonymous with the term "due process of law" in the fourteenth amendment to the United States Constitution, *see, e.g., Transportation Co. v. Currie, Comr. of Revenue*, 248 N.C. 560, 104 S.E. 2d 403 (1958), *aff'd*, 359 U.S. 28, 3 L.Ed. 2d 625 (1959), we are aided in our review by two cases from the United States Supreme Court. *Frick v. Pennsylvania*, 268 U.S. 473, 69 L.Ed. 1058 (1925); *Maxwell v. Bugbee*, 250 U.S.

525, 63 L.Ed. 1124 (1919). A close reading of these decisions leads us to conclude that the Court of Appeals' determination is erroneous because it is based upon a misunderstanding of the distinction between them.

The law is well settled that states have the power to tax nonresidents on income derived from sources within the state. *Shaffer v. Carter*, 252 U.S. 37, 64 L.Ed. 445 (1920); *Travis v. Yale & Towne Mfg. Co.*, 252 U.S. 60, 64 L.Ed. 460 (1920). Indeed, where jurisdiction to tax exists, states enjoy broad authority to determine the method and extent of taxation. *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 85 L.Ed. 267 (1940). Moreover, when a state levies taxes within its authority, property not in itself taxable by the state may be used as a measure of the tax imposed. *Maxwell v. Bugbee*, 250 U.S. 525, 63 L.Ed. 1124. At issue in *Maxwell* was a New Jersey statute which allegedly taxed the transfer of property, whether in or out of state, of resident and nonresident decedents. The amount of tax depended on the ratio of the New Jersey property to the entire estate wherever situated, but the tax was levied only upon property actually located within New Jersey. Maxwell contended that the effect of including the property beyond the jurisdiction of New Jersey in measuring the tax levied in New Jersey amounted to a deprivation of property without due process of law. The Supreme Court concluded:

> [T]he *subject matter* here regulated is a *privilege* to succeed to property which is within the jurisdiction of the State. When the State levies taxes within its authority, property not in itself taxable by the State may be used as a *measure* of the tax imposed. . . . In the present case, the State imposes a *privilege tax*, clearly within its authority, and it has adopted as a measure of that tax the proportion which the specified local property bears to the entire estate of the decedent. . . . It is in no just sense a tax upon the foreign property.

*Id.* at 539, 63 L.Ed. at 1131 (emphasis added).

In contrast, in *Frick v. Pennsylvania*, 268 U.S. 473, 69 L.Ed. 1058, upon which the Court of Appeals relied, the Supreme Court held that the state had no constitutional power to levy an inheritance tax based upon real and personal property wherever located. By including the value of tangible personal property

located outside the state in the Pennsylvania decedent's gross estate for the purpose of applying an inheritance tax on the whole estate, the Pennsylvania statute "in so far as it attempt[ed] to tax the transfer of tangible personalty having an actual situs in other States, contravene[d] the due process of law clause of the Fourteenth Amendment and [was] invalid." *Id.* at 496, 69 L.Ed. at 1065. The Supreme Court distinguished this holding from *Maxwell* on the basis that *Maxwell* did not involve an attempt to tax local property on the value of the whole; rather, the only bearing the property outside the state had on the tax was on the *rate* of tax imposed on property inside the state. *Id.*

The essential distinction between *Maxwell* and *Frick*, then, is that in the latter case, the *subject* of the tax was personal property located in other states and therefore not within Pennsylvania's jurisdiction, but in the former, the *subject* of the tax was within New Jersey's jurisdiction. In *Maxwell*, the nontaxable property was used only as a *measure* of the tax imposed on the property located in New Jersey. We believe that the facts in the case before us are comparable to *Maxwell* rather than to *Frick*. Here, contrary to the Court of Appeals' analysis, the taxpayer's Alabama income has not been used to determine whether he had income subject to taxation in North Carolina. Both parties agree that the state has jurisdiction over the *subject* of the tax, the approximately $257,987 of income earned in North Carolina in 1978 from the taxpayer's distributive share of the shopping mall sale. The remaining computation is the *measure* of the tax, which is arrived at by using the taxpayer's Alabama income in 1975, 1976 and 1977 to reduce the deduction which he would otherwise have been granted for a net economic loss carryover from $257,987 to $0.00.

Deductions are privileges, not rights. They are benefits which the state gratuitously confers. *See Maxwell v. Bugbee*, 250 U.S. 525, 63 L.Ed. 1124; *Rubber Co. v. Shaw, Comr. of Revenue*, 244 N.C. 170, 92 S.E. 2d 799 (1956); *Ward v. Clayton, Com'r of Revenue*, 5 N.C. App. 53, 167 S.E. 2d 808 (1969), *aff'd*, 276 N.C. 411, 172 S.E. 2d 531 (1970). The state has the concomitant power to limit those benefits. When the state levies taxes within its jurisdiction, income not in itself taxable by that state may therefore be used as a measure of the tax imposed without violating the due process clause of the fourteenth amendment. *Max-*

*well v. Bugbee*, 250 U.S. 525, 63 L.Ed. 1124; *see also Great Atlantic and Pacific Tea Co. v. Grosjean*, 301 U.S. 412, 81 L.Ed. 1193 (1937).

This Court has itself considered the issue in the context of inheritance taxes. *Rigby v. Clayton, Comr. of Revenue*, 274 N.C. 465, 164 S.E. 2d 7 (1968). There we held that the levy of an inheritance tax upon the transfer of property within North Carolina at a rate which considered the decedent's estate wherever situated did not violate the federal due process clause or the state law of the land clause. We adopted the Court of Appeals' reasoning that *Frick* sustained the validity of *Maxwell* by "recognizing the difference between an attempt to tax succession to property within the State in an amount computed on the value of the entire estate wherever located . . . and a statute which merely uses the value of the entire estate wherever located to determine the *rate* of tax to be applied." *Rigby v. Clayton, Comr. of Revenue*, 2 N.C. App. 57, 63, 162 S.E. 2d 682, 685 (1968). In the case *sub judice*, we continue to recognize the distinction between *Frick* and *Maxwell*. Here the taxpayer's Alabama income is merely used to determine the amount of his properly taxable North Carolina income, which in turn determines the rate of the tax to be applied to that amount. We conclude that the requirement that the taxpayer reduce his North Carolina carryover losses by his non-North Carolina income does not result in "a sophisticated scheme" which "belatedly" taxes the non-North Carolina income.

We hold that the Secretary's interpretation of N.C.G.S. § 105-147(9)(d)(2) does not violate either the due process clause of the United States Constitution or the law of the land clause of the North Carolina Constitution.

II.

[2] We now consider whether the Secretary's interpretation of N.C.G.S. § 105-147(9)(d)(2) exceeds legislative authority. *See* N.C.R. App. P. 16(a) (1988). We conclude that it does not.

With respect to a person who is a nonresident of North Carolina, N.C.G.S. § 105-136 imposes a progressive rate of tax

> upon the net income derived from North Carolina sources of every nonresident individual which is attributable to the ownership of any interest in real or tangible personal proper-

ty in this State or which is from a business, trade, profession, or occupation carried on in this State.

N.C.G.S. § 105-136 (1985). "Net income" is defined as a taxpayer's gross income less the deductions allowed by law. N.C.G.S. § 105-140 (1985). Both the Secretary and the taxpayer agree that the taxpayer had a North Carolina taxable gross income of approximately $257,987 in 1978. The question to be answered, therefore, is whether the Secretary's requirement in N.C. Admin. Code tit. 17, r. 6B.2604 that the taxpayer reduce his North Carolina carryover losses by his non-North Carolina income exceeds legislative authority.

In answering this question we are mindful of several basic rules of statutory construction in the tax area. Deductions, such as that authorized in N.C.G.S. § 105-147(9)(d)(2), are in the nature of exemptions: they are privileges, not rights, and are allowed as a matter of legislative grace. *Ward v. Clayton*, 5 N.C. App. 53, 167 S.E. 2d 808 (1969), *aff'd*, 276 N.C. 411, 172 S.E. 2d 531 (1970). When a statute provides for an exemption from taxation, any ambiguities therein are resolved in favor of taxation. *In re Clayton-Marcus Co.*, 286 N.C. 215, 210 S.E. 2d 199 (1974). "The underlying premise when interpreting taxing statutes is: 'Taxation is the rule; exemption the exception.'" *Realty Corp. v. Coble, Sec. of Revenue*, 291 N.C. 608, 611, 231 S.E. 2d 656, 658 (1977) (quoting *Odd Fellows v. Swain*, 217 N.C. 632, 637, 9 S.E. 2d 365, 368 (1940)). A statute providing exemption from taxation is strictly construed against the taxpayer and in favor of the State. *Food House, Inc. v. Coble, Sec. of Revenue*, 289 N.C. 123, 221 S.E. 2d 297 (1976). In all tax cases, the construction placed upon the statute by the Secretary (then the Commissioner) of Revenue, although not binding, will be given due consideration by a reviewing court. *Campbell v. Currie, Commissioner of Revenue*, 251 N.C. 329, 111 S.E. 2d 319 (1959).

We also find guidance in analogous case law. In *Dayton Rubber Co. v. Shaw, Comr. of Revenue*, 244 N.C. 170, 92 S.E. 2d 799 (1956), we addressed this issue with respect to corporations. There the Commissioner reduced the carryover loss of a foreign corporation doing business in North Carolina by royalty income that the corporation received which was not taxable in this state. In upholding the inclusion of nontaxable income in arriving at an

allowable deduction for carryover purposes as required by
N.C.G.S. § 105-147(6)(d) (now similarly codified as N.C.G.S.
§ 105-147(9)(d)(2) and (d)(3) ), we stated:

> It is also conceded by the defendant that the royalty income
> of the plaintiff in 1949 and 1950 was from non-unitary busi-
> ness operations having no relation or connection with the
> plaintiff's manufacturing activities in North Carolina. Thus, it
> is clear that no part of it could be taxed as income in North
> Carolina. *However, including this nontaxable income, in ar-
> riving at an allowable deduction for carryover purposes to be
> deducted from taxable income in a succeeding year, is, in our
> opinion, required by G.S. 105-147(6)(d), and we so hold.*
>
> Our Legislature was under no constitutional or other legal
> compulsion to allow any carryover to be deducted from taxa-
> ble income in a future year. It enacted the carryover provi-
> sions purely as a matter of grace, gratuitously conferring a
> benefit but limiting such benefit to the net economic loss of
> the taxpayer after deducting therefrom the allocable portion
> of such taxpayer's nontaxable income.

*Dayton Rubber Co. v. Shaw, Comr. of Revenue*, 244 N.C. at 174,
92 S.E. 2d at 802 (emphasis added). Nothing in the former statute
limited its application to resident individuals and foreign and
domestic corporations. Moreover, the second paragraph of the
statute provided:

> [T]he net economic loss for any year shall mean the amount
> by which allowable deductions for the year other than con-
> tributions, personal exemptions, prior year losses, taxes on
> property held for personal use, and interest on debts in-
> curred for personal rather than business purposes shall *ex-
> ceed income from all sources in the year including any
> income not taxable under this article.*

N.C.G.S. § 105-147(6)(d) (1961) (emphasis added). The differences
between this former statute and N.C.G.S. § 105-147(9)(d)(2) and
(d)(3) are formal, not substantive. Similarly, nothing in the present
statute limits its application to resident individuals. Neither do
we find anything in the language of *Dayton Rubber Co.* which
confines its rationale and holding to the unitary method of appor-
tionment, foreign corporations or interstate businesses as the tax-
payer contends.

In *Manufacturing Co. v. Clayton, Acting Comr. of Revenue,* 265 N.C. 165, 143 S.E. 2d 113 (1965), this Court held that where a corporation realizes a gain from the liquidation of wholly owned subsidiaries, that gain, even though not taxable income under N.C.G.S. § 105-144(c), constitutes income "from all sources including income not taxable" under N.C.G.S. § 105-147(9)(d)(2) which must be deducted from any loss carryover from a previous year. And in *Dayco Corp. v. Clayton, Comr. of Revenue,* 269 N.C. 490, 153 S.E. 2d 28 (1967), this Court held that dividends received by a foreign corporation from its stock in nonsubsidiary corporations and capital gains received from the sale of stock in the same non-subsidiary corporations must be deducted from the claimed carryover loss, because even though the income is derived from out of state transactions and is therefore not taxable by North Carolina, it nevertheless falls into the category of "income not taxable under this article" under N.C.G.S. § 105-147(9)(d)(2). Since "taxable income" means income on which North Carolina levies a tax pursuant to the Revenue Act, all *other* income is "income not taxable under this [Division]." *Dayco Corp. v. Clayton, Comr. of Revenue,* 269 N.C. at 498, 153 S.E. 2d at 33. With respect to corporations, income "not taxable" under the North Carolina Revenue Act consists of income exempt from taxation and income allocated to other states which is therefore not taxable by North Carolina. *Id.* at 496, 153 S.E. 2d at 32.

These cases, together with the rules of statutory construction referred to above, persuade us that the Secretary has correctly interpreted N.C.G.S. § 105-147(9)(d)(2) in N.C. Admin. Code tit. 17, r. 6B.2604. Nothing in the statute limits its application to resident individuals or to foreign corporations or interstate businesses. Further, nothing in the language of this Court's prior cases in the area leads us to hold otherwise. We conclude, therefore, that with respect to nonresident individuals, income from sources outside North Carolina is the equivalent of corporate income allocated to other states and is "income not taxable under this Division," which must be included in arriving at an allowable carryover deduction in an ensuing year. N.C.G.S. § 105-147(9)(d)(2) (1985); *Dayco Corp. v. Clayton, Comr. of Revenue,* 269 N.C. 490, 153 S.E. 2d 28.

The Court of Appeals determined that the Secretary's interpretation of the carryover loss provision exceeded statutory

authority as espoused in the statute's general purpose clause, which provides as follows:

> The general purpose of this Division is to impose a tax for the use of the State government upon the net income in excess of the exemptions herein allowed collectible annually:
>
> . . . .
>
> (2) Of every nonresident individual deriving income from North Carolina sources attributable to the ownership of any interest in real or tangible personal property in this State or deriving income from a business, trade, profession, or occupation carried on in this State.

N.C.G.S. § 105-134 (1985). We disagree. A virtually identical general purpose section was in effect from 1939 through 1967, but the Secretary's interpretation of the loss carryover provision was never held to contravene it. Since we have concluded that N.C. G.S. § 105-147(9)(d)(2) applies with equal force to a nonresident individual as it does to a foreign corporation or interstate business, the Secretary's interpretation of this subsection *a fortiori* does not contravene the general purpose clause.

We hold that the Secretary's interpretation of N.C.G.S. § 105-147(9)(d)(2), as evidenced by title 17, rule 6B.2604 of the North Carolina Administrative Code, does not exceed legislative authority.

In view of our disposition of this case, we do not address the other issues presented. Because we hold that the Secretary's interpretation of N.C.G.S. § 105-147(9)(d)(2) does not violate either constitutional or legislative authority, the opinion of the Court of Appeals is necessarily reversed. The case is remanded to the Court of Appeals for remand to the Superior Court, Wake County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MARTIN dissenting.

I respectfully dissent. Using the taxpayer's Alabama income to offset carryover losses is in effect a taxation of that income by

the state of North Carolina, in contravention of the taxpayer's constitutional rights.

The majority correctly identifies the two United States Supreme Court cases pertinent to the constitutional issue but goes astray in applying them to the facts of this case. In *Maxwell v. Bugbee*, 250 U.S. 525, 63 L.Ed. 1124 (1919), the taxpayer challenged on due process grounds an inheritance statute which set the tax rate for the transfer of in-state property by determining the ratio of that property to the decedent's entire estate, wherever situated. The Supreme Court upheld the statute, holding that "property not in itself taxable by the State may be used as a measure of the tax imposed." *Id.* at 539, 63 L.Ed. at 1131.

Six years later, in *Frick v. Pennsylvania*, 268 U.S. 473, 69 L.Ed. 1058 (1925), the Court was confronted with an inheritance statute which included the value of the decedent's out-of-state property in calculating the value of the gross estate to be taxed. The Court struck down the statute as violative of the due process clause of the fourteenth amendment, noting that " 'it is impossible for one State to reach out and tax property in another without violating the Constitution, for where the power of the one ends the authority of the other begins.' " *Id.* at 491, 69 L.Ed. at 1063 (quoting *United States v. Bennett*, 232 U.S. 299, 306, 58 L.Ed. 612, 616 (1914) ).

The *Frick* Court distinguished *Maxwell* on the grounds that in *Maxwell* the inclusion of out-of-state property affected only the rate of the tax. This Court has itself recognized this distinction in *Rigby v. Clayton, Comr. of Revenue*, 274 N.C. 465, 164 S.E. 2d 7 (1968). There we noted that "the 'Due process' provisions of the Federal or State Constitution are not violated by the use of value of the entire estate, wherever located, to determine the *rate* of the tax to be applied." *Id.* at 469, 164 S.E. 2d at 10.

It is to be remembered that *Maxwell*, like *Rigby*, was not concerned with a tax on property, but with the determination of the tax *rate* to be applied upon the *transmission* of property from the dead to the living. The tax in *Maxwell* and *Rigby* was a tax on the privilege to succeed to property. *Rigby*, 274 N.C. 465, 164 S.E. 2d 7. In the case before us we are involved with determining the *amount* of income subject to the statutorily established tax rate. Likewise, in *Frick* the United States Supreme Court was

concerned with determining the amount or value of the property to be taxed.

The majority also recognizes this distinction but inexplicably mischaracterizes the present case as more analogous to *Maxwell* than to *Frick*. It is clear to me that the state is not using the Alabama income to determine the rate at which the North Carolina income will be taxed. The rates for individual income tax, ranging from two percent to seven percent, have already been set by statute. *See* N.C.G.S. § 105-136 (1985). Here the state seeks instead to use the Alabama income to increase the *amount* or *value* of North Carolina income to be taxed by eliminating a legitimate loss deduction. This is a far cry from the situation in *Maxwell*, where the value of nontaxable out-of-state property solely affected the rate of tax while the value of in-state property to be taxed remained the same. Let us reverse the facts. Could the taxpayer use his Alabama *losses* to reduce his taxable North Carolina income? Obviously, the answer is no. Likewise, the state cannot use Aronov's Alabama gains to increase the amount of his taxable North Carolina income.

All parties agree that Alabama income is not taxable in North Carolina. A state may not tax value earned outside its borders. *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 73 L.Ed. 2d 787 (1982). Yet, under the majority's view, the taxpayer's liability is the same as it would have been had his Alabama income in 1975, 1976, and 1977 been North Carolina income. The majority's opinion is thus "the equivalent of saying that it was admissible to measure the tax by a standard *which took no account of the distinction between what the State had power to tax and what it had no power to tax, and which necessarily operated to make the amount of the tax just what it would have been had the State's power included what was excluded by the Constitution*." *Frick* at 494-95, 69 L.Ed. at 1064 (emphasis added). Such an approach is untenable because, as in *Frick*, "[i]t would open the way for easily doing indirectly what is forbidden to be done directly, and would render important constitutional limitations of no avail." *Id.* at 495, 69 L.Ed. 2d at 1064-65. An attempted taxation must fail "where the State exceeds its authority in imposing a tax upon a subject-matter within its jurisdiction *in such a way as to really amount to taxing that which is beyond its authority*." *Maxwell* at 539-40, 63 L.Ed. at 1131 (emphasis added).

The majority opinion now relies upon both *Frick* and *Maxwell*. In accord with *Maxwell* it states that "the taxpayer's Alabama income has not been used to determine whether he had income subject to taxation in North Carolina," arguing that the Alabama income was only used to determine the rate or increase of the tax to be applied. Later, the majority holds: "Here the taxpayer's Alabama income is merely used to determine the amount of his properly taxable North Carolina income . . . ." Thus the majority first holds that the Alabama income was only used to determine the rate of the tax, but finally admits that it was used to determine the amount of income to be subject to taxation under the statutory rate schedule.

By allowing the Alabama income to be used to determine the amount of the taxpayer's taxable income, the majority opinion violates the constitutional mandates of *Frick*. The majority engages in the utmost sophistry in upholding a tax premised solely upon the existence of constitutionally protected out-of-state income.

Although deductions are a privilege, where the state allows them it must apply them in a constitutional manner. It cannot arbitrarily remove them as to individual taxpayers without running afoul of constitutional due process guarantees. The majority opinion is constitutionally flawed. "The power of taxation shall be exercised in a just and equitable manner . . . ." N.C. Const. art. V, § 2(1). I agree with the reasoning in Judge Becton's well-drawn opinion below and vote to affirm the Court of Appeals.